[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 20, 2005
THOMAS K. KAHN
CLERK

_____

No. 05-11863
Non-Argument Calendar
_____

BIA Agency No. A95-233-002

EDUARDO ANGEL-OSORIO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(October 20, 2005)

Before TJOFLAT, BIRCH and DUBINA, Circuit Judges.

PER CURIAM:

Eduardo Angel-Osorio ("Angel-Osorio"), a Colombian national, petitions

for review of the final order of the Board of Immigration Appeals ("BIA"), which affirmed without opinion the Immigration Judge's ("IJ's") denial of his application for asylum under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101-1537.  Substantial evidence supports the IJ's decision.  Petition DENIED.

## I. BACKGROUND

On 14 December 2001, Angel-Osorio, a citizen and native of Colombia, filed an application for asylum, based on his membership in a particular group and his political opinion, claiming that he had been harassed and threatened with death by the Revolutionary Armed Forces of Colombia ("FARC").  In his application, he stated that, in 1990, he and his parents had moved to the city of Armenia, where they established themselves as farmers and created a fumigation services business. Angel-Osorio eventually became a manager of the company.  While there, he was an active member of the Colombian Liberal Party and later a member of the small faction called the "Liberal Integration Movement of the Department of Quindio" ("ILMQ").  He stated that he led the ILMQ movement in his area, through which he worked on various political campaigns and marketed his company's services and products to local farmers.

Beginning in May of 1998, according to Angel-Osorio, the Colombian army established its camp on his family's farm for about two months, two or three times

2

a year. In response, the "50th Front" of the FARC sent messages to the farm which accused Angel-Osorio of being a government spy and collaborator with politicians. After the army left, the FARC demanded a war tax from him. When he refused to pay, the FARC stole his cattle and sabotaged his equipment.

Near the end of 1999, his continued refusal to comply with its demands led the FARC to phone death threats and to infiltrate his farm with a member posing as an employee. Due to the intensity of these threats, Angel-Osorio sent his wife and son to live with his mother-in-law in Medellin. On 31 January 2000 he came to the United States "to wait for the situation to calm down." Exhs., Vol. 1 at 182.

On 9 September 2000, Angel-Osorio returned to Colombia. He relocated his family to Medellin and revived his fumigation business there. In March of 2001, he was intercepted by a FARC roadblock, but the FARC allowed him to leave after examining his documentation. After the roadblock, he once again received threatening phone calls from the FARC, which repeated its demand for a war tax. On 5 May 2001, he received a message that, if he did not pay the war tax by 8 May 2001, he "could consider [him]self a dead man." Id. at 183. On 20 May 2001, he fled to the United States.

In December 2001, Angel-Osorio filed a request for asylum and withholding of removal. On 22 March 2002, the Immigration and Naturalization Service (INS) issued a notice to appear, charging that Angel-Osorio was subject to removal as a

3

nonimmigrant who had remained in the United States for a time longer than permitted. Before the immigration judge ("IJ"), Angel-Osorio conceded his removability and requested asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman and Degrading Treatment or Punishment ("CAT"), 8 C.F.R. § 208.16(c).[1] The government then submitted the 2001 and 2002 U.S. State Department's Country Reports on Human Rights Practices for Colombia, which stated that the FARC is a guerrilla group well-known, inter alia, for killing, attacking, and threatening military personnel and citizens who do not cooperate with them, and for kidnaping and threatening business owners for refusing to comply with the FARC's "Law 002," which demands taxes from anyone with assets of over one million pesos.

During his asylum hearing, Angel-Osorio further alleged that, since 1999, three of his family's business associates, including his uncle, have been kidnaped and ransomed by the FARC. His wife and son, however, have remained in Colombia without incident. While his father has received threats from the FARC, he has not been harmed.

In an oral decision, the IJ found that Angel-Osorio was credible but,

---

[1]Angel-Osorio does not raise any challenge in his brief to the denial of relief under either withholding of removal or the CAT. When an appellant fails to offer argument on an issue, that issue is abandoned. See Sepulveda v. U.S. Attorney General, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005)(per curiam)(citing United States v. Cunningham, 161 F.3d 1343, 1344 (11th Cir. 1998)).

4

nonetheless, did not establish eligibility for asylum. Specifically, the IJ could not find that the FARC's demand for war tax related to his political activities or any other protected ground. Even if Angel-Osorio was targeted for his political activities, the IJ concluded that the harassment against him did not amount to past persecution nor did it establish a well-founded fear of future persecutions.

Angel-Osorio appealed to the BIA, arguing that, since his life was threatened numerous times by the FARC, the IJ erred by finding that he failed to establish past persecution. He argued that he was targeted because: (1) the FARC saw him as a collaborator with the government; (2) he was a member of a political party adverse to the guerrillas; and (3) he refused to pay the war tax. He further contended that, because he established past persecution, he was entitled to a presumption of future persecution, which the government failed to rebut. Without opinion, the BIA affirmed the IJ's decision. In his petition, Angel-Osorio argues that the BIA committed error by not finding that the threats and harassment he endured fell within the level of persecution required by the Immigration and Nationality Code.

## II. DISCUSSION

A. Standard of Review

We only review the BIA's decision, "except to the extent that it expressly adopts the IJ's opinion." Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). "Insofar as the [BIA] adopts the IJ's reasoning, we will review the IJ's

decision as well." Id. In this case, because the BIA expressly adopted the IJ's decision, we will review the IJ's decision as if it were the BIA's. See id. To the extent that the IJ's decision was based on a legal determination, review is de novo. Mohammed v. Ashcroft, 261 F.3d 1244, 1247-48 (11th Cir. 2001). The IJ's factual determinations, however, are reviewed "under the highly deferential substantial evidence test," which requires us to "view the record in the light most favorable to the [IJ]'s decision and draw all reasonable inferences in favor of that decision." Adefemi v. Ashcroft, 386 F.3d 1022, 1026-27 (11th Cir. 2004)(en banc), cert. denied, ___ U.S. ___, 125 S.Ct. 2245 (2005). We "must affirm the [IJ]'s decision if it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Al Najjar, 257 F.3d at 1284 (quoting Lorisme v. INS, 129 F.3d 1441, 1444-45 (11th Cir. 1997)). "Under this highly deferential standard of review, the IJ's decision can be reversed only if the evidence 'compels' a reasonable fact finder to find otherwise." Sepulveda, 401 F.3d at 1230 (citing INS v. Elias-Zacarias, 502 U.S. 478, 481 n.1, 112 S. Ct. 812, 815 n.1 (1992); Adefemi, 386 F.3d at 1027).

B. Asylum

An alien who arrives in, or is present in, the United States may apply for asylum. 8 U.S.C. § 1158(a)(1). The Secretary of Homeland Security and the

6

Attorney General both have the discretion to grant asylum if the alien meets the Code's definition of a "refugee." Id. § 1158(b)(1)(A). In relevant part, a "refugee" is defined as:

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . .

Id. § 1101(a)(42)(A). The asylum applicant carries the burden of proving statutory "refugee" status. Al Najjar, 257 F.3d at 1284. To establish asylum eligibility, the alien must, with specific and credible evidence, establish (1) past persecution on account of a statutorily listed factor, or (2) "a well-founded fear" that the statutorily listed factor will cause future persecution. 8 C.F.R. § 208.13(a)-(b); Al Najjar, 257 F.3d at 1287. As such, "an applicant must demonstrate that his or her fear of persecution is subjectively genuine and objectively reasonable." Al Najjar, 257 F.3d at 1289. Further, "[t]he applicant must also establish a causal connection between the [statutory ground] and the feared prosecution, presenting specific, detailed facts showing a good reason to fear that he or she will be *singled out* for persecution on account of [the statutory ground]." Sepulveda, 401 F.3d at 1231 (internal quotations omitted). We have stated that "where the alleged persecutors are not affiliated with the government, it is not unreasonable to require

7

a refugee who has an internal resettlement alternative in his own country to pursue that option before seeking permanent resettlement in the United States, or at least to establish that such an option is unavailable." Mazariegos v. Office of the United States Attorney General, 241 F.3d 1320, 1327 (11th Cir. 2001).

Although neither the INA nor the regulations define "persecution," we have discussed other circuits' holdings that "persecution is an extreme concept, requiring  more than a few isolated incidents of verbal harassment or intimidation, and that mere harassment does not amount to persecution." Sepulveda, 401 F.3d at 1231 (11th Cir. 2005) (internal quotations and alteration omitted).  Moreover, we have recognized that "evidence consistent with acts of private violence or that merely shows that an individual has been the victim of criminal activity does not constitute evidence of persecution on a statutorily protected ground." Sanchez v. U.S. Attorney General, 392 F.3d 434, 438 (11th Cir. 2004) (citing Abdille v. Ashcroft, 242 F.3d 477, 494-95 (3d. Cir. 2001)).

As an initial matter, substantial evidence exists to support the IJ's decision that Angel-Osorio was not targeted because of membership in a particular social group or his political opinion but was targeted instead for economic and monetary reasons.  As for membership in a particular social group, Angel-Osorio did not provide sufficient evidence to compel the conclusion that the FARC specifically targeted him because he shared a protected characteristic with others, as opposed to

8

targeting him simply because the group wanted to extort large amounts of money. See In re Acosta, 19 I. & N. Dec. 211, 233 (BIA 1985), (noting further that the common characteristic defining a particular social group "must be one that the members of the group either cannot change, or should not be required to change because it is so fundamental to their individual identities or consciences"), overruled on other grounds, Matter of Mogharrabi, 19 I. & N. Dec. 439, 441 (BIA 1987); see also Garcia et al. v. United States Attorney General, No. 04-12185, 2005 U.S. App. LEXIS 16991, at *14 (11th Cir. Aug. 10, 2005) ("shared economic status does not create a social group for asylum purposes.").

As for his political opinion, while there is some mention by the FARC of Angel-Osorio being corrupt and collaborating with government officials, the evidence similarly does not compel the conclusion that the FARC targeted Angel-Osorio to punish him for his political opinion, rather than to raise funds for its own activities through the war tax. See INS v. Elias-Zacarias, 502 U.S. 478, 483, 112 S. Ct. 812, 816 (1992); Sanchez, 392 F.3d at 438. Additionally, his involvement with a small political affiliate of the Colombian Liberal Party, the ILMQ, in which he participated for both economic and political reasons, also does not compel the conclusion that the FARC's alleged persecution was on account of his political opinion. In short, there is insufficient evidence to compel a finding that a nexus exists between his political opinion and the FARC's onerous demands. See Elias-

9

Zacarias, 502 U.S. at 483, 112 S. Ct. at 816.

Even assuming that the FARC targeted Angel-Osorio on account of a statutorily listed factor, the few isolated incidents of harassment in this case were not so menacing and immediate as to rise to the level of persecution. The essence of his claim is that members of FARC phoned him multiple times to demand extortion money and threaten his life, had one abortive attempt to infiltrate his farm, and briefly detained him at a roadblock. Under our precedent, such actions are insufficient to amount to past persecution. See Sepulveda, 401 F.3d at 1231 (concluding that mail and phone threats and the bombing of a restaurant where petitioner worked did not constitute persecution); Gonzalez v. Reno, 212 F.3d 1338, 1355 (11th Cir. 2005) (noting that "'persecution' requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty") (quoting Mikhailevitch v. INS, 146 F.3d 384, 390 (6th Cir. 1998)). Moreover, contrary to Angel-Osorio's contention, the level of alleged persecution in this case was lower than the persecution in Bellido v. Ashcroft, where the petitioner was physically abused while in custody pursuant to an illegal arrest. See 367 F.3d 840, 846 (8th Cir. 2004).

Substantial evidence also supports the IJ's conclusion that the petitioner failed to establish a well-founded fear of future persecution. As previously noted,

10

the FARC's alleged persecution of Angel-Osorio consisted almost exclusively of phone threats and Angel-Osorio never was physically harmed. This undercuts his claim that he fears that he will be persecuted should he return to Colombia. Further undercutting his fear of future persecution is the evidence that (1) his family has remained unharmed in Colombia; and (2) he came to the United States, following what he called "intense" threats from the FARC and, rather than applying for asylum, he shortly thereafter returned to Colombia. Although Angel-Osorio may subjectively fear that he will be persecuted by the FARC upon his return to Colombia, his fear is not objectively reasonable based on the record evidence. See Al Najjar, 257 F.3d at 1289. Moreover, the evidence does not compel a conclusion that Angel-Osorio will be singled out for alleged persecution on a statutorily protected ground rather than for his wealth and his refusal to pay extortion money.

## III. CONCLUSION

Angel-Osorio has appealed the BIA's final order affirming the IJ's denial of his application for asylum. Under our highly deferential standard of review, we hold that the IJ's decision denying asylum is supported by substantial evidence. Petition **DENIED.**

11