[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 23, 2005
THOMAS K. KAHN
CLERK

No. 05-11882
Non-Argument Calendar
_____

BIA Nos.
A78-399-904
A78-399-905


MAURICIO ARANZAZU-ALZATE,
CLAUDIA PATRICIA UPEGUI JARAMILLO,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of an Order of the
Board of Immigration Appeals
_____

(December 23, 2005)


Before BLACK, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Mauricio Aranzazu-Alzate and Claudia Patricia Upegui Jaramillo petition for review of the Board of Immigration Appeals' ("BIA's") decision affirming the Immigration Judge's ("IJ's") order, which found them removable and denied their application for asylum, withholding of removal under the Immigration and Nationality Act ("INA") and for relief under the United Nations Convention Against Torture ("CAT"), 8 U.S.C. §§ 1158, 1231; 8 C.F.R. § 208.1(c). After review, we deny the petition for review.

## I. BACKGROUND

Alzate and his wife, Jaramillo, both natives and citizens of Colombia, were detained on July 22, 2000, at the Miami International Airport. Alzate admitted using a back-dated stamp to mislead immigration officials to believe that, on a prior visit to the United States, he had not overstayed his visa. During a credible fear interview, Alzate explained that he sought to enter the United States because he feared persecution from Revolutionary Armed Forces of Colombia ("FARC") guerillas because of his participation in an anti-FARC program for employees at the company where he worked in Colombia and his active membership in the Conservative party.

On August 3, 2000, the Immigration and Naturalization Service ("INS") filed a Notice to Appear ("NTA") and sought their removal. At an initial hearing

before the IJ, Alzate admitted to all the allegations in the NTA and conceded removability as charged for willfully misrepresenting material facts to procure a visa for admission into the United States, in violation of 8 U.S.C. § 1182(a)(6), and for failing to have a validated or unexpired immigrant visa at the time of application for admission into the United States, in violation of 8 U.S.C. § 1182(a)(7). The IJ also scheduled a hearing to allow Alzate sixty days to complete the asylum application.

Alzate completed an application for asylum, withholding of removal and CAT relief, alleging persecution based on his opposition to the FARC and his membership in the Conservative party. According to Alzate, in November 1998, while an accountant at a large manufacturing company in Medellin, he participated as a leader in a two-to-three week program to educate company employees about the FARC guerillas and to urge the employees not to support the FARC. Alzate also supported the Conservative party by attending parties and campaign meetings.

Following the anti-FARC education program, Alzate received five telephone calls from individuals identifying themselves as members of the FARC warning him not to speak against the FARC and demanding money. Alzate refused to pay the FARC, saying that he did not agree with their beliefs. Other

employees and the company for which Alzate worked also received threats from the FARC for a few months after the education program.

After Alzate refused to give in to the FARC's money demand, his car was stolen. The following day, he received a phone call from the FARC claiming responsibility for the theft and again demanding money. When Alzate again refused to give them money, the caller said Alzate's life was at risk.

After this threatening conversation, Alzate, fearing that the FARC might try to kidnap him or harm his wife, took a leave of absence from his job and decided to leave Colombia temporarily for his safety. Alzate and his wife arrived in the United States in January 1999 on "visitor for pleasure" visas. While in the United States, Alzate kept in touch with family members and company employees in Colombia who said that they continued to receive telephone threats from the FARC and that one high-level executive had been kidnapped.

In December 1999, Alzate returned to Colombia to visit for fifteen to twenty days. Although nothing happened to him during this visit, he decided he should leave Colombia for two or three months to be sure that everything had calmed down. On January 10, 2000, he re-entered the United States on the same visitor visa he had used previously. Alzate then mailed his passport back to Columbia to

obtain false entry stamps indicating that he had left the United States on January 30, 2000. He actually returned again to Colombia in July 2000.

Upon his arrival in Colombia, he called several of his friends from work, who prepared a dinner in his honor. After receiving threatening phone calls at both his parents' and in-laws' homes, however, Alzate decided that the FARC would never leave him alone, that it was not safe to remain in Colombia and that he needed to return to the United States. Alzate and his wife returned to the United States on July 22, 2000, where they were detained by the INS at the airport.

Alzate submitted, among other things, the following attachments to his 2000 asylum application: (1) a certificate of employment with the manufacturing company; (2) a co-worker's statement that he too participated in the anti-FARC education campaign and received death threats from FARC guerillas, causing him to leave the company; (3) an affidavit from his mother-in-law stating that Alzate had received several threatening phone calls from the FARC, that these calls continued after Alzate left for the United States and when he returned to Colombia and that the callers told her not to hide Alzate because he needed to settle his pending issues with the FARC; (4) letters from his parents stating that Alzate had received threatening phone calls from the FARC while at their home and that they continued to receive threatening calls from the FARC after Alzate left and when

5

he returned; a letter from a legal representative of the Progressive Force F.P. stating that Alzate had been a member for several years; (5) a police report confirming that Alzate's car was reported stolen on November 28, 1998 in Medellin and was recovered and returned in February 1999; (6) the State Department's 1999 Country Report for Colombia, designating the FARC as a foreign terrorist organization and stating, inter alia, that the FARC guerillas were responsible for the majority of kidnapping in Colombia, that kidnappings were an important source of revenue for the FARC and that businessmen were preferred victims.

In his verbal decision in April 2003, the IJ denied petitioners' applications for asylum, withholding of removal and CAT relief. Specifically, the IJ found that Alzate's testimony was credible, but insufficient "to provide a plausible and coherent account of the basis of his alleged fear" and that Alzate had no objectively reasonable fear of persecution. The IJ also found that Alzate failed to show that he was entitled to withholding of removal and was not eligible for CAT relief.

Petitioners appealed the decision to the BIA. The BIA affirmed the IJ's decision. The BIA focused on the fact that Alzate had returned to Colombia on several occasions, which undercut his assertion that he feared persecution, and that

neither he nor anyone in his family have ever been harmed. Petitioners timely filed a petition for review.

## II. DISCUSSION

### A.      Asylum

An alien who arrives in or is present in the United States may apply for asylum. See 8 U.S.C. § 1158(a)(1). The Attorney General has discretion to grant asylum if the alien meets the INA's definition of a "refugee." See 8 U.S.C. § 1158(b)(1). A "refugee" is

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A). The asylum applicant carries the burden of proving statutory "refugee" status. See Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001).

To carry this burden of proving statutory "refugee" status, the alien must, with specific and credible evidence, establish either (1) past persecution on account of a statutorily listed factor, or (2) a "well-founded fear" that the statutorily listed factor will cause future persecution. 8 C.F.R. §§ 208.13(a),(b);

7

Al Najjar, 257 F.3d at 1287.[1]  In order to be well-founded, a fear of persecution

must be both "subjectively genuine and objectively reasonable."  Al Njjar, 257

F.3d at 1289.  A finding of past persecution creates the presumption of a well-

founded fear of persecution and shifts the burden to the government to

demonstrate that either conditions have changed in the alien's home country, or

the alien could avoid such persecution by relocating in the home country and that

relocation is reasonable.  8 C.F.R. § 208.13(b)(1).

## B.    Petitioners' Claim

We conclude, based on the record as a whole, that the BIA's denial of the

petitioners' asylum applications is supported by substantial evidence.[2]  With

regard to past persecution, Alzate's treatment at the hands of the FARC guerillas

does not rise to the level of persecution.  "Although the INA does not expressly

define 'persecution' for purposes of qualifying as a 'refugee,' we have discussed

---

[1] On appeal, petitioners argue that they are entitled to asylum based not only on political opinion, but also on Alzate's membership in a social group as a well-educated member of a prominent and intellectual social class.  Alzate failed to claim asylum on this basis in his application for asylum or at any time in the administrative proceedings.  Having failed to administratively exhaust this issue, we do not have jurisdiction to consider it on review.  See Fernandez-Bernal v. United States Att'y Gen., 257 F.3d 1304, 1317 n.13 (11th Cir. 2001).

[2] We review only the BIA's decision, as it did not expressly adopt the IJ's decision.  Al Najjar, 257 F.3d at 1284.  The BIA's determinations are reviewed under the substantial evidence test, and we "must affirm the BIA's decision if it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'"  Id. (quoting Lorisme v. INS, 129 F.3d 1441, 1444-45 (11th Cir. 1997)).  To the extent the BIA's decision is based on a legal determination, our review is de novo.  Mohammed v. Ashcroft, 261 F.3d 1244, 1247-48 (11th Cir. 2001).

other circuits' holdings that 'persecution' is an 'extreme concept,' requiring 'more than a few isolated incidents of verbal harassment or intimidation,' and that '[m]ere harassment does not amount to persecution." Sepulveda v. United States Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005) (quoting Gonzalez v. Reno, 212 F.3d 1338, 1355 (11th Cir. 2000) and holding that menacing phone calls and threats to family members and other members of group do not rise to level of past persecution). Alzate received threatening phone calls, and his car was stolen, but then returned by the police without any payment to the FARC. Such threats and acts of intimidation, without any significant harm, do not rise to the level of past persecution. See id.

Turning to future persecution, we cannot say that the record compels the finding that Alzate will more likely than not be subjected to persecution upon removal. See Adefemi v. Ashcroft, 386 F.3d 1022, 1029 (11th Cir. 2004) (en banc), cert. denied, 125 S. Ct. 2245 (2005). The BIA concluded that Alzate's fear was not objectively reasonable. As the BIA noted, despite Alzate's subjective fear of the FARC, Alzate was able to return to Colombia several times without suffering any harm. See Hakeem v. INS, 273 F.3d 812, 816-17 (11th Cir. 2001) (holding that an applicant's claim of asylum is weakened, even undercut, when the applicant has returned to the country without incident). During one of his return

9

visits, Alzate made contact with co-workers and met them for an uneventful celebratory dinner even though he admitted that the FARC learned of his return visits via friends and co-workers. Additionally, while the FARC knew the telephone numbers of members of Alzate's family, his family was never threatened or harmed. Moreover, although Alzate had heard that a high-level company executive had been kidnapped, Alzate never received a face-to-face threat during any of his return visits. Under these circumstances, there is substantial evidence to support the finding that Alzate's fear of future persecution was objectively unreasonable.

Alzate contends that he has established a well-founded fear of future persecution as a matter of law by the fact alone that he received death threats after refusing to make extortion payments to the FARC. We disagree. The cases cited by Alzate – Mgoian v. INS, 184 F.3d 1029 (9th Cir. 1999) and Gonzales-Neyra v. INS, 122 F.3d 1293 (9th Cir. 1997) – are notably different from Alzate's. Indeed, Mgoian did not involve allegations of extortion at all, and Gonzales-Neyra involved death threats made after an extortion payment was made and it then became apparent to the extortionists that the applicant had reported them to the police.[3] Furthermore, the facts supporting a well-founded fear of persecution in

_____

[3] Gonzales-Neyra also did not address whether death threats following extortion attempts establish an objective fear of future persecution. The issue in Gonzales-Neyra was whether an

10

Mgoian and Gonzales-Neyra were more egregious than those presented by Alzate, and neither applicant in those cases was able to visit their home country safely. Here, during the eighteen months following Alzate's participation in the anti-FARC education program, he was never confronted face-to-face by the FARC, he and his family were never harmed, his car was recovered without payment and he returned to Columbia twice without any harm. The facts of this case do not establish a reasonable fear of future persecution.

Given Alzate's failure to carry his lower burden of proof with regard to past persecution or future persecution, he was not entitled to withholding of removal or CAT relief. See Forgue v. United States Att'y Gen., 401 F.3d 1282, 1288 n.4 (11th Cir. 2005) (noting that, where an applicant fails to establish a claim of asylum on the merits, his other claims for withholding of removal under the INA or for CAT relief generally fail); Al Najjar, 257 F.3d at 1292-93(same).

For the above reasons, we conclude that the BIA's decision is supported by substantial evidence and deny Alzate's petition.

**PETITION DENIED.**

---

applicant can prove fear of persecution "on account of" political opinion when the initial motive for extortion was economic, but the subsequent threats to the applicant's life and business were made only after the applicant made his political opposition to the extortionists known. Id. at 1296. Because substantial evidence supports the BIA's determination that Alzate's fear that the FARC would carry out its threats was not objectively reasonable, we do not reach the separate question of whether the FARC's motive for carrying out those threats was "on account of" Alzate's political opinion, the issue addressed in Gonzales-Nevra.