[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 27, 2006
THOMAS K. KAHN
CLERK

_____

No. 06-12688
Non-Argument Calendar
_____

Agency Nos. A97-626-434
A97-626-435

JULIO CESAR MONTES GARCIA,
OLGA LUCIA DUQUE LLANO,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

**(November 27, 2006)**

Before DUBINA, CARNES and KRAVITCH, Circuit Judges.

PER CURIAM:

I.

Julio Cesar Montes Garcia ("Garcia"), on behalf of himself and his wife

Olga Lucia Duque Llano, petitions this court for review of the Board of

Immigration Appeals's ("BIA") affirmance of the Immigration Judge's ("IJ") order

of removal and denial of asylum and withholding of removal.

Garcia, a native and citizen of Colombia, was admitted to the United States

on an immigrant visa in September 1998 and remained beyond the expiration

period. His wife was admitted in April 2000 and also remained beyond the

expiration period of her visa. The Immigration and Naturalization Service

("INS")[1] then issued notices to appear in March 2004, charging them with

removability for having remained in the United States longer than permitted.

Immigration and Nationality Act § 237(a)(1)(B); 8 U.S.C. § 1227(a)(1)(B).

In August 2003, prior to the INS issuing notices to appear, Garcia filed an

asylum application alleging that he had been persecuted based on his political

activities and membership in a social group. Garcia indicated that he had been

active in a political campaign, the candidate for whom he had worked had been

killed, and members of his wife's family had been threatened and kidnaped by

---

[1] On November 25, 2002, President Bush signed into law the Homeland Security Act of 2002 ("HSA"), Pub. L. No. 107-296, Stat. 2125. The HSA created a new Department of Homeland Security ("DHS"), abolished the INS, and transferred its functions to the new department.

2

members of the Revolutionary Armed Forces of Colombia ("FARC"). Garcia admitted that this asylum application was untimely, but argued that changes in Colombia should excuse the delay.

At the removal hearing, the IJ expressed concern that Garcia's asylum application had been prepared by Excaliber Translations, Inc. ("Excaliber"), a service the judge described as having previously filed applications with the court that were highly suspect. As some of the applications from Excaliber had previously been withdrawn after the petitioners had spoken with counsel, the IJ wanted to give Garcia a chance to amend his application if necessary. In response, Garcia moved the IJ to recuse himself based on bias. The IJ denied the motion.

Also at the removal hearing, Garcia conceded removability. He then testified that in Colombia he had been active in the Liberal Party for over fifteen years and had participated in health brigades and education programs. He also discussed his involvement in a mayoral campaign in 1997, after which the candidate had been killed. As a result of his activities, Garcia testified that he was threatened by members of the FARC. Though Garcia admitted he was never harmed by the FARC, he stated that he was afraid they would kidnap or kill him. Garcia also told the IJ that a few months before coming to the United States in 1998 he received calls from members of the FARC in which the callers claimed responsibility for killing the mayoral candidate and threatened that the same thing

3

would happen to him if he did not leave Colombia.

Garcia explained in the removal hearing that he did not file an asylum application until 2003 because he had waited and hoped that the conditions in Colombia would change. Garcia also stated that in May 2002 his wife's cousin was kidnaped by FARC. When asked why, after the events of 2002, he waited until August 2003 to file his asylum application, Garcia testified that it took time to find someone to help him make the filing.

The IJ denied relief and rejected Garcia's motion to recuse. In doing so, the IJ stated that he had not prejudged the case or shown any prejudice by informing Garcia that there had been problems with Excaliber. The IJ also noted that the proceedings were not rendered fundamentally unfair by his comments. The IJ then found Garcia's asylum application untimely and rejected his excuses of changed circumstances and lack of knowledge of the process. While this determination meant Garcia's asylum application would be denied as a matter of law, the IJ also found that it would have nevertheless been denied on the facts as presented. First, the IJ found that Garcia lacked credibility based on his demeanor, the vague and general nature of his testimony, and the omitted events and inconsistencies with regard to his testimony. Second, the IJ determined that Garcia had not established a country-wide fear. Finally, the IJ found that Garcia failed to provide sufficiently detailed, believable, and consistent testimony to establish past persecution or a well

4

founded fear of future persecution.  The IJ then concluded that because Garcia's application for asylum would have been denied on the facts, he failed the heavier showing required to grant withholding.  The IJ also denied protection under the Convention Against Torture ("CAT").  Finally, the IJ found that Garcia's application was frivolous and fraudulent.

Petitioners appealed to the BIA.  The BIA concluded that Garcia was not denied a constitutionally fair hearing as a result of the IJ's refusal to recuse himself.  The BIA further found that the asylum application was untimely and there were no changed circumstances to excuse the delay.  The BIA agreed with the IJ's credibility determination based on the IJ's conclusions regarding Garcia's demeanor and his implausible and questionable testimony.  The BIA also affirmed the IJ's decision to deny withholding of removal.[2]  With regard to the IJ's determination of frivolousness, however, the BIA reversed, finding that there was insufficient evidence.  Petitioners then initiated this petition for review.

## II.

Garcia argues that the removal hearing was fundamentally unfair because the IJ was predisposed to deny relief and to find Garcia lacked credibility.  A Fifth Amendment due process challenge to an immigration proceeding is reviewed <u>de novo</u>.  <u>Abdulrahman v. Ashcroft</u>, 330 F.3d 587, 595-96 (3d Cir. 2003).  Recusal is

---

[2] Petitioners did not appeal the IJ's denial of relief under CAT to the BIA.

warranted if it is shown that "the immigration judge had a personal, rather than judicial, basis stemming from an 'extrajudicial' source which resulted in an opinion on the merits on some basis other than what the immigration judge learned from his participation in the case." Matter of Exame, 18 I&N Dec. 303, 306 (BIA 1982). Recusal is also appropriate where "such pervasive bias and prejudice is shown by otherwise judicial conduct as would constitute bias against a party." Id. However, as the Supreme Court has explained, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgement impossible." Liteky v. United States, 510 U.S. 540, 555 (1994). Here, nothing in the record requires the IJ's recusal. The IJ merely expressed concern over previous applications submitted by Excaliber in other cases and advised Garcia to discuss the issue with his counsel. This situation did not rise to the level of bias or prejudicial conduct and, accordingly, there was no fundamental unfairness in the proceeding.

Next, Garcia argues that this court has jurisdiction to consider whether his application was timely and whether any exceptions exist to permit an untimely application. Garcia also argues that the IJ was in error in determining that the facts did not fall within the definition of changed or extraordinary circumstances.

6

Questions of subject-matter-jurisdiction are also reviewed de novo. Gonzalez-Oropeza v. U.S. Att'y Gen., 321 F.3d 1331, 1332 (11th Cir. 2003). An asylum application must be "filed within 1 year after the date of the alien's arrival in the United States." 8 U.SC. § 1158(a)(2)(B). Here, there is no dispute that Garcia arrived in 1998 and did not file his application until 2003. Thus, as Garcia concedes, his application was untimely. Under 8 U.S.C. § 1158(a)(2)(D), however, an untimely asylum application may be considered if the alien can demonstrate extraordinary circumstances relating to the delay in filing an application within the one-year period. 8 U.S.C. § 1158(a)(2)(D); 8 C.F.R. § 208.4(a)(5). However, "[n]o court shall have jurisdiction to review any determination of the Attorney General under [section 1158(a)(2)]." 8 U.S.C. § 1158(a)(3). As such, "§ 1158(a)(3) divests [this court] of jurisdiction to review a decision regarding whether an alien complied with the one-year limit or established extraordinary circumstances that would excuse his untimely filing." Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003); Fahim v. U.S. Att'y Gen., 278 F.3d 1216, 1217-18 (11th Cir. 2002). Despite this court's retention of jurisdiction to review constitutional claims or questions of law, timeliness of an asylum claim is not a constitutional question or question of law. Chacon-Botero v. U.S. Att'y Gen., 427 F.3d 954, 957 (11th Cir. 2005). Although Garcia argues that he is challenging the IJ's legal determinations regarding whether this situation fits

within the context of a changed circumstance, he is actually challenging the IJ's factual findings. Therefore, this court lacks jurisdiction over the asylum claim and should dismiss the petition as to this ground.

Garcia then argues that he is entitled to withholding. When the BIA issues a decision, we review only that decision, except to the extent that the BIA expressly adopts the IJ's decision. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). To the extent the BIA's or IJ's decisions were based on a legal determination, review is de novo. Mohammed v. Ashcroft, 261 F.3d 1244, 1247-48 (11th Cir. 2001). The BIA's factual determinations are reviewed under the substantial evidence test, and we must affirm if the decision "is supported by reasonable, substantial, and probative evidence on the record as a whole." Al Najjar, 257 F.3d at 1283-84. The IJ's factual determinations, however, are reviewed under the "highly deferential substantial evidence test," which requires us to "view the record in the light most favorable to the [IJ's] decision and draw all reasonable inferences in favor of that decision." Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1255 (11th Cir. 2006); Adefemi v. Ashcroft, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005). We "must affirm the [IJ's] decision if it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Al Najjar, 257 F.3d at 1284 (quoting Lorisme v. INS, 129 F.3d 1441, 1444-45 (11th Cir. 1997). Thus, "a finding of fact

8

will be reversed only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Id. (quotation omitted); see also Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1236 (11th Cir. 2006).

Garcia first argues that the IJ's credibility finding was erroneous because his testimonial inconsistencies were minor, the IJ was biased, and the IJ improperly refused to consider the opinion of Professor Marc Chernick regarding Colombian political violence. A credibility determination is a factual finding reviewed under the substantial evidence test, and this court should not "substitute [its] judgement for that of the [IJ] with respect to credibility findings." Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1255 (11th Cir. 2006); D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 818 (11th Cir. 2004). Furthermore, an IJ's denial of relief can be supported solely by an adverse credibility determination, especially if the alien produces no corroborating evidence. In re Y-B, 21 I&N Dec. 1136, 1139 (BIA 1998). Finally, a single inconsistency may be sufficient to support an adverse credibility finding if the inconsistency relates to the alien's basis for his fear and goes to the heart of the asylum claim. Lui v. U.S. Att'y Gen., 156 Fed. Appx. 270 (11th Cir. 2005) (unpublished). Here, there is substantial evidence to support the adverse credibility finding, including the IJ's factual findings regarding Garcia's demeanor and eye contact, the determinations by the asylum official, the IJ, and the BIA that Garcia

9

lacked credibility, and the inconsistencies in Garcia's testimony.

Second, Garcia argues that he should receive withholding of removal because he established past persecution and that it is more likely than not that, if returned to Colombia, he will be persecuted due to his political beliefs. To qualify for withholding of removal based on persecution by a guerilla group on account of a political opinion, Garcia must establish that the guerillas persecuted him or will seek to persecute him in the future because of his actual or imputed political opinion. Sanchez v. U.S. Att'y Gen., 392 F.3d 434, 438 (11th Cir. 2004). This standard is more stringent than the well-founded fear standard for asylum claims. D-Muhumed, 388 F.3d at 819. Here, in light of the adverse credibility determination, Garcia cannot meet this burden. After careful review of the record as a whole, we conclude that Garcia cannot show past persecution or demonstrate that it is more likely than not that he will be persecuted in the future.

Accordingly, we **DISMISS** the petition in part and **DENY** the petition in part.