Omar MARTINEZ–BENITEZ, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 91–5506.

United States Court of Appeals, Eleventh Circuit.

March 30, 1992.

**1054**

Randall L. Sidlosca, Mary E. Kramer, Miami, Fla., for petitioner.

Donald Couvillon, Justice Dept./Civ. Div. /OIL, Richard M. Evans, Lloyd M. Green, Lauri Steven Filppu, U.S. Dept. of Justice, for respondent.

Before ANDERSON and COX, Circuit Judges, and RONEY, Senior Circuit Judge.

ANDERSON, Circuit Judge:

### FACTS

Petitioner is a 26 year-old native and citizen of Cuba who illegally entered the United States without inspection on August 7, 1981. Petitioner's father was a high-ranking member of the Cuban government, but his family was estranged from the father and actively opposed the Castro regime. Petitioner's parents were divorced, and he grew up with his mother, two older brothers and an older sister.

As a result of anti-communist activities, petitioner's mother was forced to leave her job as a college professor, and Cuba's security police arrested petitioner's siblings several times. In 1980, most of petitioner's family escaped to the United States through the Marielito boat lift. However, one of petitioner's brothers was sentenced to five years in prison for counter-revolutionary activities and did not rejoin petitioner's family in the United States until 1985. Furthermore, petitioner was not allowed to leave Cuba because, as a minor, he needed permission to leave the country from both parents, and his father withheld his permission.

Vigilante neighborhood groups ransacked and vandalized petitioner's home, and the government cut off the phone, water and electricity. Petitioner was not allowed to attend school because he refused to denounce publicly his family members as traitors. In 1981, after petitioner went to the United States Interest Section in the Swiss Embassy to seek asylum, he was arrested, beaten, and taken by security police to a State detention hospital where he was drugged and put into a psychological ward for three weeks. Petitioner then lived at his father's home under a form of "house arrest" until he succeeded in getting a visa to go to Jamaica in May of 1981, from which he traveled to the United States three months later.

On December 2, 1988, petitioner pled guilty in Puerto Rico to a charge of possessing with intent to distribute 188.9 grams of cocaine in violation of 21 U.S.C. § 841(a)(1). The district court sentenced him to four years imprisonment, but the parole commission granted him release after eleven months due to the fact that he had no prior criminal record and had behaved well in prison. Upon release from prison, petitioner was taken into immigration custody.

Petitioner applied for asylum in an application dated January 18, 1990. After a March 29, 1990 hearing, the immigration judge found that, because of petitioner's conviction, he was ineligible for withholding of deportation. *See* 8 U.S.C. § 1253(h)(2)(B). However, the immigration judge weighed the equities in petitioner's case and granted his application for asylum.[1]

---

1. Section 515 of the Immigration Act of 1990, Pub.L. 101–649, 104 Stat. 4978, amended the Immigration and Nationality Act of 1952 so that an alien convicted of an aggravated felony, as

On May 17, 1991, the Board of Immigration Appeals ["the Board"] reversed the immigration judge's grant of asylum, holding that petitioner's narcotics conviction outweighed favorable considerations. Petitioner challenges the Board's denial of his application for asylum, arguing that the Board abused its discretion by failing properly to consider and weigh the equities in reaching its decision.

## DISCUSSION

Section 208(a) of the Immigration and Nationality Act of 1952 ["the Act"] vests discretion in the Attorney General to grant asylum to any alien "if the Attorney General determines that such alien is a refugee within the meaning of [the Act]." 8 U.S.C. § 1158(a).[2] The Supreme Court has emphasized that "an alien who satisfies the applicable standard under § 208(a) does not have a *right* to remain in the United States; he or she is simply *eligible* for asylum, if the Attorney General, in his discretion, chooses to grant it." *I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 443, 107 S.Ct. 1207, 1219, 94 L.Ed.2d 434 (1987) (emphasis in original). On appeal, INS concedes that petitioner is a "refugee" eligible for asylum under the Act, and, accordingly, the only question before this court is whether the Board acted properly when it denied petitioner's application for asylum.

In *Blackwood v. I.N.S.*, 803 F.2d 1165, 1168 (11th Cir.1986), this court observed, "Judicial review of denials of discretionary relief incident to deportation proceedings is limited to determining whether there has been an exercise of administrative discretion, and whether the manner of exercise has been arbitrary or capricious." In a case like this, where the immigration judge and the Board disagree, "[t]he standard of review remains the same." *Id.* The reviewing court is not free to choose between

the two interpretations, but must defer to the Board if its decision is supported by substantial evidence. *Id.*

■ Even after the Board has determined that an applicant for asylum has been convicted of a serious narcotics offense, the Board must consider all evidence in support of the alien's request in order for a reviewing court to find that the Board has properly exercised its discretion. *Arauz v. Rivkind*, 845 F.2d 271, 276-77 (11th Cir.1988). In particular, the Board must evaluate the nature and underlying circumstances of the applicant's conviction in order to determine the weight it should accord to this adverse factor. *Matter of Marin*, 16 I & N 581, 584 (BIA 1978); *see also Blackwood*, 803 F.2d at 1168 (approving of Board considering factors enumerated in *Marin*). Petitioner asserts that the Board acted arbitrarily because it failed properly to consider and weigh all the factors petitioner's case presented and specifically argues that the Board failed to consider the nature and circumstances of petitioner's crime as a mitigating factor.

■ We find that the Board acted arbitrarily when it failed to consider the facts underlying petitioner's narcotics conviction in reaching its decision to deny petitioner's application for asylum. In its opinion, the Board considered only the charge in the indictment to which petitioner pled guilty. Not only did the Board fail to take into account the immigration judge's finding that petitioner's crime actually involved approximately 100 grams of cocaine, rather than the 188.9 grams charged in the indictment, but it criticized the immigration judge for exceeding his authority by looking beyond the terms of the indictment to the parole commission report.

here, is categorically barred from applying for or being granted asylum. *See* 8 U.S.C. § 1158(d). However, this amendment applies only to applications made on or after November 29, 1990. *Id.* Since petitioner's application was dated on January 19, 1990, petitioner was eligible for asylum. *See* 8 U.S.C. § 1158(a).

2. Under the Act, an alien is a "refugee" if he or she is outside the country of her nationality and is "unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion...." 8 U.S.C. § 1101(a)(42).

The Board's opinion, in effect, transforms petitioner's plea of guilty to the offense of possessing cocaine into an admission that petitioner's crime involved the amount of cocaine alleged in the indictment. It is true that a guilty plea constitutes "an admission of all the elements of a formal criminal charge." *McCarthy v. United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969). However, the law of this circuit is well-settled that "quantity is not an element of 21 U.S.C. § 841(a)(1) 'because quantity is not included as an element in the definition of the offense under that subsection.'" *United States v. Van Hemelryck,* 945 F.2d 1493, 1503 (11th Cir.1991) (quoting *United States v. Cross,* 916 F.2d 622, 623 (11th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1331, 113 L.Ed.2d 263 (1991));[3] *see also United States v. Andrews,* 953 F.2d 1312, 1318 (11th Cir.1992). The quantity of cocaine involved in petitioner's offense became relevant only with respect to sentencing, not to the determination of petitioner's guilt or innocence. *See Andrews,* 953 F.2d at 1318; *Van Hemelryck,* 945 F.2d at 1503; *Cross,* 916 F.2d at 623; *United States v. Simmons,* 725 F.2d 641, 643–44 (11th Cir.), *cert. denied,* 469 U.S. 827, 105 S.Ct. 108, 83 L.Ed.2d 52 (1984); *cf. McMillan v. Pennsylvania,* 477 U.S. 79, 84–86, 106 S.Ct. 2411, 2415–16, 91 L.Ed.2d 67 (1986) (distinguishing element of crime from sentencing factor). Accordingly, petitioner's guilty plea did not constitute an admission that petitioner possessed with the intent to distribute any particular amount of cocaine.

In this case, the immigration judge found that petitioner in fact possessed less cocaine than the indictment alleged. We find that the Board should have considered this finding in order to assign the proper weight in its decision-making process to petitioner's narcotics conviction. We conclude that the Board was arbitrary in failing to do so.

For the foregoing reasons, we VACATE the Board's decision and REMAND for further proceedings in conformity with this judgment.

VACATED and REMANDED.

---

**3.** 21 U.S.C. § 841(a)(1) makes it unlawful for any person knowingly or intentionally "to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance...."