**[ PUBLISH]**

# IN THE UNITED STATES COURT OF APPEALS

# FOR THE ELEVENTH CIRCUIT

_____

No. 96-5451
Non-Argument Calendar
_____

INS A72-028-494


CERESTE LORISME,

                                        Petitioner,


        versus


IMMIGRATION AND NATURALIZATION
SERVICE,

                                        Respondent.


_____

Petition for Review of an Order of the
Board of Immigration Appeals
_____

**(December 2, 1997)**

Before HATCHETT, Chief Judge, BIRCH and CARNES, Circuit Judges.

HATCHETT, Chief Judge:

        Before the court is a petition for review of a decision of the Board of Immigration

Appeals (BIA) that upheld an immigration judge's (IJ) order denying petitioner Cereste Lorisme's request for asylum and withholding of deportation under sections 208 and 243(h) of the Immigration and Naturalization Act (INA), 8 U.S.C. §§ 1158 & 1253(h). Because we find substantial evidence to support the BIA's decision, we deny Lorisme's petition.

## I. BACKGROUND

In February 1992, petitioner Lorisme fled his hometown of Fond Palmiste, Haiti, for the United States naval base in Guantanamo Bay, Cuba. Members of the Ton Ton Macoute (Macoutes), militant opponents of then-ousted President Jean-Bertrand Aristide, had arrested Lorisme earlier that day at his church for singing a religious song with the words: "he is in the air, he's coming, he's coming up and he is coming down." The Macoutes interpreted "he" to mean Aristide and considered the song, despite Lorisme's lack of affiliation with any political organization, an expression of support for Aristide's return to power.

As the Macoutes led Lorisme away from the church, Lorisme convinced them that he needed to relieve himself. Proceeding toward the brush, Lorisme escaped to the coast where he soon boarded a boat for Cuba. Lorisme's wife and children remained in Haiti.[1]

After paroling Lorisme into the United States, the Immigration and Naturalization Service (INS) initiated deportation and exclusion proceedings against Lorisme in mid-

---

[1] One of Lorisme's sons fled to Cuba with Lorisme, but federal officials later sent him back to Haiti.

1995. Lorisme, through counsel, admitted to the INS's charge of excludability but applied for asylum and withholding of deportation. As grounds, Lorisme expressed fear that, if returned to Haiti, he would suffer retaliation for his escape and his reputation as a supporter for Aristide, who returned to power in October 1994.

The IJ conducted a hearing at which only Lorisme testified. Lorisme's counsel, however, introduced sixty-six exhibits into evidence, most of which were newspaper articles, editorials, agency reports and press releases regarding the current political and human rights conditions in Haiti.

At the conclusion of the hearing, the IJ orally denied Lorisme's application in its entirety. Specifically, the IJ found that Lorisme failed to show past persecution or a well-founded fear of future persecution on account of any of the five statutory grounds for asylum, including political opinion. The IJ expressed concern over Lorisme's credibility and the lack of physical harm the Macoutes inflicted upon Lorisme during his arrest. He also rejected the bulk of Lorisme's exhibits because they were not specific as to the Haitian region where Lorisme lived.

On administrative appeal, the BIA affirmed the IJ's order and dismissed Lorisme's appeal. The BIA agreed with the IJ that Lorisme did not suffer past persecution in Haiti. The BIA also concluded that Lorisme did not have a well-founded fear of persecution on account of political opinion or any of the other statutory grounds for asylum. Unlike the IJ, the BIA did not support its conclusion with a determination that Lorisme lacked

3

credibility.[2]  Rather, the agency reasoned as follows:

> We find that the political changes in Haiti, including the dismantling of Haiti's military government and Aristide's return to power in 1994, which were discussed at [Lorisme's] hearing, are sufficient to resolve any questions of a well-founded fear of persecution raised in this case.  While the record contains sufficient evidence that Haiti has experienced some general strife even after Aristide's return to power, [Lorisme] has not provided any evidence to indicate that the current Haitian government seeks to harm him or that it is unable or unwilling to protect him from any individuals or groups who may seek to harm him.

In re Cereste Lorisme, No. A72 028 494 - Miami, at 2 (B.I.A. Nov. 4, 1996) (unpublished) (per curiam).  Finally, like the IJ, the BIA rejected Lorisme's request for withholding of deportation because he failed to satisfy the lower burden of proof required for asylum.

One member of the BIA filed a concurring and dissenting opinion.  The board member concurred with the majority's finding of no past persecution.  Unlike the majority, however, she believed that Lorisme did, in fact, have a well-founded fear of persecution on account of political opinion.  First, she characterized Lorisme's lack of physical harm as non-determinative.  She also deemed the IJ's and BIA's reliance on improving conditions in Haiti as inappropriate administrative notice "based only upon an understanding of popular media accounts."  In re Cereste Lorisme, supra, at 3 (Rosenberg, Bd. Mbr., dissenting).  The board member pointed to a 1990 intra-INS memorandum regarding asylum policy on Eastern European and Soviet aliens and a 1994

---

  [2]  Indeed, the BIA noted that substantial evidence did not support the IJ's conclusion that Lorisme's testimony was not credible.

intra-INS memorandum applying a similar policy to Haitian aliens. She also relied on a contemporaneous report that the Department of State issued, advising that efforts to disarm completely the Macoutes were of limited success.

Next, the board member criticized the majority for overlooking Haiti's recent political unrest in analyzing the reasonableness of Lorisme's fear of persecution. She noted that Lorisme's lack of prominence or celebrity status would assure him little protection. Finally, the board member concluded that the majority abused its discretion in failing to "give adequate weight" to documentary evidence, such as a United Nations's press release and an "article" in the Miami Herald, which Lorisme had submitted. In re Cereste Lorisme, supra, at 4-5 (Rosenberg, Bd. Mbr., dissenting).

## II. ISSUE

The issue we discuss is whether reasonable, substantial and probative evidence supports the BIA's decision to uphold the IJ's order denying petitioner Lorisme's request for asylum for failure to establish a well-founded fear of persecution on account of political opinion.

## III. CONTENTIONS

Lorisme, proceeding without counsel before this court, adopts and incorporates the arguments of the dissenting board member as his own.[3] Thus, he does not challenge the

---

[3] We reject the INS's contention that Lorisme abandoned his petition for review when he adopted the board member's dissent as his argument. We read liberally briefs filed pro se. See Finch v. City of Vernon, 877 F.2d 1497, 1504 (11th Cir. 1989). Had Lorisme written the dissent himself, its contents would clearly satisfy the citation requirements of

BIA's conclusions regarding past persecution or withholding of deportation. Rather, Lorisme appeals only that portion of the majority opinion addressing fear of future persecution.

The INS contends that the BIA did not take "administrative notice" of changed conditions in Haiti. Rather, the INS argues that substantial evidence in the record, including a Department of State profile, supports the BIA's finding that political conditions for Aristide supporters significantly improved after his return to power. These changes, the INS claims, included the disarming and dismissing of the Macoutes and local arms of the Haitian government loyal thereto.

## IV. DISCUSSION

The INA provides, in pertinent part, that "[t]he Attorney General may grant asylum to an alien . . . if the Attorney General determines that such alien is a refugee within the meaning of section 1101(a)(42)(A) of [Title 8]." 8 U.S.C. § 1158(b)(1). As relevant to Lorisme, a "refugee" is "any person who is outside of any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself . . . of the protection of, that country because of . . . a well-founded fear of persecution on account of . . . political opinion . . . ." 8 U.S.C. § 1101(a)(42)(A). Both this court and the Supreme Court have emphasized that "an alien who satisfies the [applicable standard for asylum] does not have a right to remain in the

Fed. R. App. P. 28(a)(6). The fact that Lorisme, Creole speaking and illiterate, chose to adopt this official's position as his own is perfectly acceptable.

6

United States; he or she is simply <u>eligible</u> for asylum, if the Attorney General, in [her] discretion, chooses to grant it." <u>Martinez-Benitez v. INS</u>, 956 F.2d 1053, 1055 (11th Cir. 1992) (quoting <u>INS v. Cardoza-Fonseca</u>, 480 U.S. 421, 443 (1987)). As such, we review the BIA's decision under the deferential substantial evidence test. <u>See</u> 8 U.S.C. § 1105a(a)(4) (providing that the reviewing court must affirm the BIA's decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole" ); <u>Perlera-Escobar v. Executive Office for Immigration</u>, 894 F.2d 1292, 1296 (11th Cir. 1990) (<u>per curiam</u>).[4] We must defer to the BIA unless "a reasonable factfinder would have to conclude that the requisite fear of persecution existed." <u>INS v. Elias-Zacarias</u>, 502 U.S. 478, 481 (1992).

After a review of the record before the BIA, we conclude that substantial evidence supports its decision. First, the implication that the BIA placed dispositive weight on Lorisme's lack of physical harm lacks merit. The IJ is the only adjudicator to mention this factor, and it is one of many in his order.

Next, contrary to the dissenting board member's view, the majority did not take administrative notice of improving conditions in Haiti after Aristide's return. The phrase

---

[4] We recognize that Congress repealed section 1105a, effective September 30, 1996. Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), Pub. L. No. 104-208, § 306(b), 110 Stat. 3009. The new judicial review provision can be found in the amendments to 8 U.S.C. § 1252. As the INS correctly points out, however, the repeal and amendments do not apply to the instant petition as Lorisme was still in exclusion and deportation proceedings within 180 days of the effective date. IIRIRA, Pub. L. No. 104-208, § 309(a), (c)(1) & (c)(4), 110 Stat. 3009 (codified at 8 U.S.C.A. § 1101 note (Supp. 1997)).

"administrative notice" does not appear anywhere in the majority's opinion. Rather, the opinion states, and the record reflects, that the parties "discussed" Haiti's condition at the hearing before the IJ. In re Cereste Lorisme, supra, at 2. If the BIA had truly taken administrative notice, the parties would have had little need to discuss anything since the subject matter would not have been subject to reasonable dispute. Cf. Fed. R. Evid. 201(b) (defining a "judicially noticed fact" as one "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned").

Even if the BIA took some measure of administrative notice, it is not inappropriate. The record contains substantial, corroborative evidence of Haiti's improving conditions. Nearly all of the documents that Lorisme submitted make reference to this notion. While many of these documents focus on the political unrest in Haiti, even after the return of Aristide, it is not for this court to re-weigh the evidence. See Martinez-Benitez v. INS, 956 F.2d 1053, 1055 (11th Cir. 1992). We do, however, note that the dissenting board member's belief that the majority relied on "popular media accounts" appears disingenuous in light of her reliance on an editorial, which she labeled an "article." In re Cereste Lorisme, supra, at 5 (Rosenberg, Bd. Mbr., dissenting). Additionally, as the dissenting board member recognized, other circuits have expressly authorized the use of administrative notice. E.g., Kapcia v. INS, 944 F.2d 702, 705-706 (10th Cir. 1991) (approving the BIA's administrative notice of the Solidarity

8

becoming a part of the Polish coalition government); Kaczmarczyk v. INS, 933 F.2d 588, 593-97 (7th Cir.) (approving the BIA's administrative notice of political changes in Poland so "as to render unsupportable the petitioners' fears of future persecution"), cert. denied, 502 U.S. 981 (1991). But cf. Vallencillo-Castillo v. INS, --- F.3d ---, ---, No. 95-70020 (9th Cir. July 30, 1997) (holding that administrative notice of changed conditions alone will not rebut the presumption of well-founded fear of future persecution once the alien has proven past persecution). Indeed, in another Haitian asylum case, the former Fifth Circuit arguably approved of the BIA's ability to take administrative notice of the country's political conditions. See Coriolan v. INS, 559 F.2d 993, 1002-1003 (5th Cir. 1977) (instructing the INS, on remand, to evaluate the opinion of Amnesty International because "newspaper clippings . . . can be admissible to demonstrate probable persecution" and the BIA "is even prepared to take administrative notice of a nation's political conditions").

Although we find substantial evidence to support the BIA's decision, we disagree with its finding that Lorisme did not provide any evidence to indicate that the current Haitian government is unable to protect him from any individuals or groups who may seek to harm him. Numerous documents, including some referenced in the dissent, speak of the new government's struggles to disarm and neutralize rural militant groups such as the Macoutes. As Lorisme conceded at the hearing before the IJ, however, these documents discuss "general conditions in the country," the most recent of which regard violence surrounding the June 1995 elections. Counsel for Lorisme also admitted that

9

none of the documents specifically addresses the political conditions in Fond Palmiste or other parts of Lorisme's home region. We have upheld BIA decisions denying asylum to petitioners who introduced far more specific and probative evidence of future persecution. See Nkacoang v. INS, 83 F.3d 353, 355 (11th Cir. 1996) (denying a South African alien's petition for review despite evidence that the South African police visited his family's home the day after they received a telephone call from the alien, who had participated in anti-apartheid activities and was affiliated with anti-apartheid political organizations). Given the characteristics of Lorisme's documentary evidence, a reasonable fact finder could have found the evidence of improved political conditions more credible than the evidence of Haiti's inability to protect Lorisme.

## V.  CONCLUSION

For the foregoing reasons, we conclude that the BIA properly upheld the IJ's order (1) denying Lorisme's application for asylum and (2) denying Lorisme's request to withhold deportation. Accordingly, we affirm the BIA's decision and deny Lorisme's petition for review.

**PETITION DENIED.**