[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-13416
Non-Argument Calendar

_____

Agency No. A77-013-688

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 13, 2005
THOMAS K. KAHN
CLERK

ANTOINE MAXIME,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(June 13, 2005)

Before BLACK, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

Antoine Maxime is a native and citizen of Haiti.  Proceeding pro se, he

petitions for review of the Board of Immigration Appeals' order affirming without opinion the immigration judge's denial of his request for asylum and withholding of removal under the Immigration and Nationality Act and for relief under the Convention Against Torture.

Maxime first contends that the IJ erred by denying his application for asylum because, according to Maxime, the record shows that he has a well-founded fear of persecution based on his political opinion.

Because the BIA affirmed the IJ's decision without an opinion, we review the IJ's decision. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). We use a "highly deferential" standard of review to determine whether there is substantial evidence in the record to support the IJ's factual decision that Maxime is not eligible for asylum. Id. "We must defer to the [IJ] unless a reasonable factfinder would have to conclude that the requisite fear of persecution existed." Lorisme v. INS, 129 F.3d 1441, 1445 (11th Cir. 1997) (internal marks omitted).

Any alien who arrives or is present in the United States may apply for asylum, and the Attorney General has discretion to grant asylum to anyone who qualifies as a "refugee." 8 U.S.C. § 1158(a)(1), (b)(1). A "refugee" is defined by the INA as "any person who is outside any country of such person's nationality . . . who is unable or unwilling to return to . . . that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality,

2

membership in a particular social group, or political opinion . . . ." Id. § 1101(a)(42)(A).

"To establish asylum eligibility based on political opinion or any other protected ground, the alien must, with credible evidence, establish (1) past persecution on account of [his] political opinion . . . , or (2) a 'well-founded fear' that [his] political opinion . . . will cause future persecution." Sepulveda v. U.S. Attorney Gen., 401 F.3d 1226, 1230–31 (11th Cir. 2005). The alien must present "specific, detailed" facts showing that the persecution he has suffered or fears he will suffer is on account of his political opinion. Id. at 1231. "Even a clear probability that an alien's life is threatened without any indication that the basis of the threat is related to a statutorily enumerated ground is insufficient to establish eligibility for relief." Perlera-Escobar v. INS, 894 F.2d 1292, 1297 (11th Cir. 1990).

Here, substantial evidence supports the IJ's conclusion that Maxime has failed to establish either past persecution or a well-founded fear of future persecution on account of a protected ground. First, there is no evidence that Maxime suffered past persecution on account of his political opinion. Maxime did testify that he was shot at and received several threatening telephone calls, but he provided no evidence that those incidents were related to his political opinion. Neither the shooters nor the callers identified themselves as members of the

3

Lavalas party (the group that Maxime claims has or will persecute him), nor did they say anything about Maxime's political opinion or that of his family members. In fact, Maxime himself admits that he was not involved with politics in any way or associated with any groups or organizations in Haiti.

Second, Maxime has failed to show that he has a well-founded fear of future persecution due to his political opinion. Maxime claims that several of his relatives who had been members of the Haitian army were killed by members of the Lavalas party, which abolished the Haitian army and cracked down on its former members after regaining power in Haiti in 1994. Maxime contends that his relationship with those family members also makes him a target of Lavalas. There are numerous problems with this claim.

First, although Maxime testified that several of his relatives, including his father and brothers, had been killed, he presented no other evidence to suggest they were murdered.[1] Furthermore, even if we were to assume that Maxime's family members were murdered, Maxime has provided only speculative and secondhand evidence to suggest that their deaths were related to their political opinions. For instance, Maxime claims that his uncle's killers wrote "Have respect for KLSN

---

[1] Maxime attempted to introduce their death certificates, but the IJ did not admit them into evidence because Maxime had submitted them untimely. Even if the death certificates had been admitted, they provide no evidence that Maxime's family members were murdered because they do not describe the causes of death or provide any other information to corroborate Maxime's testimony.

Lavalas" on a wall in his uncle's home. Yet, Maxime was not there and did not see the message; he learned of it only from neighbors who told him about it. Similarly, Maxime's claim that his father died due to stress resulting from the robbery of his bakery by members of the Lavalas party is mere speculation based on what others told him. Maxime was not there at the time of either the robbery or his father's death. Moreover, Maxime specifically admitted that he did not know who had killed his brother Rony or what had happened to his other brother Ganel; he simply "imagine[d]" it was Lavalas. A.R. 124.

Finally, even if we were to assume that Maxime's family members were murdered due to their political opinions or their involvement in the former Haitian army, that would not show that Maxime will also be the target of such violence. In fact, the record shows that Maxime was not closely affiliated with his relatives who were members of the former Haitian army. He was raised by an aunt and did not live with his father and brothers or have close contact with them. That Maxime's relatives who were members of the former army may have been targeted by Lavalas is insufficient to show that he will be, especially considering that he was never a member of the army. Even the country report that Maxime belatedly submitted (and which, therefore, the IJ did not admit into evidence) states that attacks on relatives of former Haitian army soldiers are not a problem in Haiti.

Next, Maxime contends that the IJ incorrectly determined that he was not

entitled to either withholding of removal or relief under the Convention Against Torture. We disagree.

The burden of proof is higher for withholding of removal than for asylum. Thus, if "an applicant is unable to meet the 'well-founded fear' standard for asylum, he is generally precluded from qualifying for either asylum or withholding of deportation." Al Najjar, 257 F.3d at 1292–93. Because Maxime failed to establish a well-founded fear of persecution sufficient to support his asylum claim, he also could not establish that he was eligible for withholding of removal, and the IJ's decision was proper.

Substantial evidence also supports the IJ's conclusion that Maxime is not entitled to relief under the Convention Against Torture because he failed to show that he will more likely than not be tortured if he is returned to Haiti. 8 C.F.R. § 208.16(c)(2). An IJ must consider all evidence relevant to the possibility of future torture, including evidence of past torture inflicted on the applicant and evidence that the applicant could relocate to a part of the country where he is unlikely to be tortured. Id. § 208.16(c)(3). Here, Maxime has shown no evidence of past torture. The IJ properly considered the fact that, on at least one occasion, the police department (members of which, according to Maxime, had attempted to kill him) let him go without incident.

Furthermore, the record suggests that Maxime could relocate to another part

of Haiti to avoid any likelihood of torture.  Maxime's (now) ex-wife has remained in Haiti with their two children without any problems.  And, Maxime himself testified that he became a target only after Lavalas party members who knew that his uncle, father, and brothers had been in the former Haitian army saw him at a funeral in Cap-Haitien.  Thus, it is reasonable to conclude that Maxime could avoid problems with those Lavalas members by relocating to another town.

PETITION DENIED.