[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 7, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-12106
Non-Argument Calendar

_____

BIA Nos. A98-705-768 & A98-705-769

JOSE ANTONIO ZAKIA ANTOR,
NAIYARA ADRIANA PINTO LEE,
LIBANO LEON ZAKIA PINTO,
BRAYIAN ALEJANDRO ZAKIA PINTO,

                                                      Petitioners,

                              versus

U.S. ATTORNEY GENERAL,

                                                      Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(February 7, 2008)

Before BIRCH, DUBINA and KRAVITCH, Circuit Judges.

PER CURIAM:

Jose Antonio Zakia Antor[1] petitions this court for review of the Bureau of Immigration Affairs' (the "BIA") affirmance of the Immigration Judge's (the "IJ") order of removal and denial of asylum relief. For the reasons stated below, we deny the petition in part and dismiss in part.

## I. BACKGROUND

Zakia Antor, a citizen of Venezuela, arrived in the United States on a non-immigrant visa. His wife and children arrived separately. They all remained beyond the expiration periods of their visas, and the Department of Homeland Security issued notices to appear, charging them with removability under INA § 237(a)(1)(B) (codified at 8 U.S.C. § 1227(a)(1)(B)). Zakia Antor then filed an application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture.

At his removal hearing, Zakia Antor testified that he had joined the Democratic Action Party in 2000 when he was still living in Venezuela. In January 2003, Zakia Antor participated in a demonstration protesting the arrest of a prominent general opposed to President Hugo Chavez. Members of the Bolivarian Circles Party threw tear gas at the demonstrators and beat them as they tried to escape. Zakia Antor was beaten during this incident and required treatment by a

---

[1] Zakia Antor files this petition on behalf of himself, his wife Naiyara Pinto Lee, and their two minor daughters, Libano and Brayain.

physician and a dentist for injuries to his head and mouth. Zakia Antor admitted, however, that he had not been singled out for this attack and that 43 other demonstrators were also injured. In approximately November or December 2003, he and other Democratic Action Party members were attacked and threatened as they collected signatures calling for the removal of President Chavez. In early 2004, Zakia Antor was again with a group that was attacked as they attempted to deliver the signatures and one member was killed. Again, Zakia Antor did not believe that he was singled out. In March 2004, Zakia Antor was threatened and attacked while helping coordinate a work stoppage. Zakia Antor then left Venezuela for the United States by himself.

Shortly after leaving, in April 2004, Zakia Antor returned to Venezuela on business. During his time in the United States, men came to his business in Venezuela looking for Zakia Antor although it is unclear from the record what they wanted. After he returned to Venezuela, Zakia Antor received phone calls from members of the Bolivarian Circles warning him to stop his political activities. Zakia Antor again traveled to the United States alone and during that period, his wife's car was vandalized with the words "you will die" scratched into the side of it. Zakia Antor testified that he believed the Bolivarian Circles had placed his name on a death list. Despite these events, Zakia Antor returned to Venezuela in September 2004. While there, he was approached by an armed man on a

3

motorcycle who at one point pointed a gun at him, but Zakia Antor was able to escape unharmed. He later received a phone call telling him that he would not escape the next time. Zakia Antor filed a police report, but the police refused to help. Zakia Antor then left Venezuela for the last time; his wife and children left sometime later.

Zakia Antor conceded that many people who opposed Chavez continued to live safely in Venezuela, and that his family remained there. He also admitted that, between 2000 when he joined the Democratic Action Party and 2004 when he requested asylum in the United States, he traveled to the United States and returned to Venezuela five or six times usually without incident.

In support of his asylum application, Zakia Antor submitted articles about attacks on opponents of Chavez, the cover of the police report regarding the 2004 incident with the motorcyclist, and certifications from the doctor and dentist who had treated him in 2003. The government submitted the State Department Country Report on Venezuela.

The IJ denied relief, finding that Zakia Antor had not established past persecution or a well-founded fear of future persecution because Zakia Antor's experiences amounted to no more than verbal harassment. The IJ found that no evidence established that the alleged motorcycle incident occurred on account of Zakia Antor's political opinion, and in the other physical attacks he admitted that

4

he had not been singled out. The IJ did not make an explicit adverse credibility determination, but did refer to Zakia Antor's inability to identify specific individuals involved in harassing him, the possibility of relocation, the fact that the Venezuela government issued a passport and visas to Zakia Antor, and Zakia Antor's frequent travel to and from Venezuela without incident as support for the IJ's findings.

Zakia Antor filed a notice of appeal to the BIA, and identified the following issues: (1) ineffective assistance of counsel; (2) a well-founded fear of future persecution; and (3) the inability to relocate within Venezuela. His notice of appeal did not mention past persecution or relief under the Convention Against Torture. Zakia Antor requested and was granted an extension of time to file his brief to the BIA. He failed, however, to file a brief within the time of the extension period, and the BIA denied his later motion to accept an untimely brief.

The BIA adopted and affirmed the IJ's decision that Zakia Antor had not suffered past persecution nor hold a well-founded fear of future persecution. The BIA found the Department of Homeland Security had not met its burden to show that Zakia Antor could reasonably relocate. Nevertheless, the BIA upheld the IJ's finding that Zakia Antor had not shown that his well-founded fear was objectively reasonable in light of his multiple travels back to Venezuela.

5

## II. STANDARD OF REVIEW

This court reviews the decision of the BIA, but where the BIA has expressly adopted the IJ's reasoning, we review the IJ's decision as well. See Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). Factual determinations are reviewed under the substantial evidence test, and this court "must affirm the BIA's decision if it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Id. (quoting Lorisme v. INS, 129 F.3d 1441, 1444-45 (11th Cir. 1997)). A finding of fact will be reversed "only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (*en banc*). Legal determinations, however, are reviewed de novo. Ruiz v. U.S. Attorney Gen., 440 F.3d 1247, 1254 (11th Cir. 2006).

## III. DISCUSSION

*Preservation of Claims*

In his briefs to this Court, Zakia Antor presents arguments relating only to his claim that he holds a well-founded fear of future persecution should he return to Venezuela. His arguments relating to past persecution, the Convention Against Torture, and ineffective assistance of counsel, therefore, have been abandoned. See Sepulveda v. U.S. Attorney Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

6

Additionally, because Zakia Antor never raised the issues of past persecution nor the Convention Against Torture to the BIA, he has failed to exhaust these claims. Thus, we lack jurisdiction to hear those claims and dismiss them. See Sundar v. INS, 328 F.3d 1320, 1323 (11th Cir. 2003).

The government argues that Zakia Ankor also waived specific arguments relating to his claim for asylum based on a well-founded fear of future persecution. As his notice of appeal was filed pro se, we will liberally construe that notice. See Tannenbaum v. U.S., 148 F.3d 1262, 1263 (11th Cir. 1998). The notice of appeal clearly stated that Zakia Antor objected to the IJ's finding that he had not objectively established his fear of future persecution. When construed liberally, this preserved the related argument that IJ erred in finding that the motorcycle incident was not connected to his political activity.

*Eligibility for Asylum*

The Attorney General has discretion to grant asylum if an alien meets the statutory definition of "refugee." 8 U.S.C. § 1158(b)(1). To establish refugee status, the asylum applicant must prove an inability or unwillingness to avail himself of the protection of his home country because of persecution or a well-founded fear of future persecution on account of, *inter alia*, his political opinion. 8 U.S.C. §§ 1101(a)(42)(A), (B); Al Najjar, 257 F.3d at 1284. This Court has held that "persecution" is an "extreme concept requiring more than a few isolated

incidents of verbal harassment or intimidation, and that mere harassment does not amount to persecution." Sepulveda, 401 F.3d 1226, 1231 (11th Cir. 2005) (internal quotations and alterations omitted).

A well-founded fear of future persecution may be established by showing (1) past persecution that creates a presumption of a well-founded fear of future persecution, (2) a reasonable possibility of future persecution that cannot be avoided by relocating within the subject country, or (3) a pattern or practice in the applicant's home country of persecuting members of a statutorily defined group of which the applicant is a part. See 8 C.F.R. § 208.13(b)(1), (2), (3)(i). As Zakia Antor has waived his claim that he experienced past persecution and has never argued pattern or practice, he must establish a well-founded fear of future persecution in Venezuela to establish eligibility for asylum. Id. To do so, Zakia Antor must demonstrate that his fear is "subjectively genuine and objectively reasonable." Al Najjar, 257 F.3d at 1289. "The subjective component can be proved by the applicant's credible testimony that he or she genuinely fears persecution, while the objective component can be fulfilled either by establishing past persecution or that he or she has a good reason to fear future persecution." Ruiz v. U.S. Attorney Gen., 440 F.3d 1247, 1258 (11th Cir. 2006) (internal quotation omitted).

The IJ made no specific adverse credibility determination, and so we take Zakia Antor's testimony as true. Yang v. U.S. Attorney Gen., 418 F.3d 1198, 1201 (11th Cir. 2005). We will, therefore, accept that he established his subjective fear of persecution. The question remaining before us is whether the record supports the IJ's conclusion that the objective evidence did not prove that Zakia Antor's fear is reasonable. Based on our thorough review, we cannot say that the record compels us to find that Zakia Antor's fear of future persecution in Venezuela is objectively reasonable.

By his own admission, Zakia Antor was not singled out during any of the physical attacks he experienced following demonstrations and while gathering signatures. In each instance he was attacked as part of a group and no evidence indicates that any of his attackers would remember him or pursue persecuting him in the future based on those incidents.

The phone calls and other threats he received, including the threats scratched into his car, although harassing never amounted to persecution. Case law of this Circuit clearly holds that mere threats and intimidation do not rise to the level of persecution. See Gonzales v. Reno, 212 F.3d 1338, 1355 (11th Cir. 2000) (quoting Mikhailevitch v. INS, 146 F.3d 384, 390 (6th Cir. 1998) for the holding that "'persecution' 'requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or

9

significant deprivation of liberty"). The fact that threats do not constitute past persecution is also relevant to whether Zakia Antor has provided objective evidence of a fear of future persecution. See Sepulveda v. U.S. Attorney Gen., 401 F.3d 1226, 1232 (11th Cir. 2005) (discussing threats and phone calls as non "persecution" in the context of a future persecution claim).

Zakia Antor's only potential evidence that he was ever personally singled out and threatened in person involved the incident of the armed motorcyclist. Although the evidence in the record could lead a reasonable person to conclude that this attack was carried out on account of his political opinion, it does not compel us to so conclude. Zakia Antor's petition for asylum and his hearing testimony recounted that he received a threatening phone call after the motorcycle incident from someone identifying himself as a member of Bolivarian Circles saying that, essentially, the next time he would not escape. This case is similar to Sepulveda wherein a Columbian woman was denied asylum for failing to conclusively establish a connection between the one severe incident she experienced and her political opinion. 401 F.3d at 1231-32. There, the petitioner was involved in negotiations with political kidnappers wherein "mailboxes" were placed in restaurants to aid in communications with the kidnappers. Id. at 1229. Even though a bomb placed in the mailbox in the restaurant where petitioner worked exploded and the petitioner believed that the bomb was related to her

political activities, this Court found that she had not sufficiently proven that the bomb was actually connected to her and her political opinion. In this case, the evidence is even more attenuated. Zakia Antor did not testify that the caller made any references to the motorcyclist in particular nor to Zakia Antor's political activity. In fact, his petition for asylum suggests that days may have passed between the phone call and the incident.[2]

Even if we assume that the motorcycle incident was connected to his political opinion, nothing in that incident truly rose above mere intimidation. It is true that severe physical injury is not required to establish asylum eligibility. Mejia v. U.S. Attorney Gen., 498 F.3d 1253, 1257 n.7 (11th Cir. 2007) (noting that an intentional shooting that misses its target can still constitute past persecution). But the asylum applicant must provide objective evidence of conduct that rises above the level of mere threats and intimidation and a connection between that evidence and his political opinion. Here, the motorcyclist did not attempt to shoot at Zakia Antor either when he pointed his gun at him or when Zakia Antor was driving away. The incident, therefore, does not rise above the level of mere intimidation.

---

[2] His petition for asylum made it seem as though three days passed between the incident and the phone call, or at least enough time for him to find his cousin, stay with him, and gather advice from various members of his party.

Finally, the IJ noted Zakia Antor's willingness to return repeatedly to Venezuela during the period when he was allegedly suffering persecution as evidence that his fear is objectively unreasonable. Zakia Antor argues that Delgado v. U.S. Attorney Gen., 487 F.3d 855 (11th Cir. 2007) establishes that return trips should not be used as evidence of a lack of fear of future persecution. In Delgado, however, the court did note that two return trips were taken to the petitioner's home country, but never analyzed what impact that fact had on the petitioner's asylum claim. Id. Furthermore, Delgado dealt with past persecution, not fear of future persecution. In Santamaria v. U.S. Attorney Gen., — F.3d —, 2008 WL 109406 (11th Cir. 2008), this Court recently held that petitioner's return trips did not undermine her asylum claim; the Court noted, however, that the trips all occurred before the most severe of the persecutory acts. Here, Zakia Antor took five to six trips all occurring after he received most of the threats and phone calls.

Zakia Antor argues that the IJ used the wrong standard to analyze his claim of a well-founded fear of future persecution because the IJ limited the analysis to a claim for past persecution. We disagree; the IJ discussed Zakia Antor's alleged fear of future persecution at length.

## IV. CONCLUSION

Because substantial evidence supports the IJ's finding, Zakia Antor's petition is **DENIED** in part and **DISMISSED** in part.