[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 25, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-13774
Non-Argument Calendar

_____

BIA No. A98-396-853

MILAGROS NAKARY NOLASCO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(March 25, 2008)**

Before CARNES, BARKETT and PRYOR, Circuit Judges.

PER CURIAM:

Milagros Nakary Nolasco, a native and citizen of Venezuela, petitions this

Court for review of the decision of the Board of Immigration Appeals that denied her application for asylum and withholding of removal under the Immigration and Nationality Act and the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment. The Board found that Nolasco failed to prove that she suffered "past prosecution," a probability of future persecution, or she was "more likely than not" to be tortured when she returns to Venezuela. We deny Nolasco's petition.

## I. BACKGROUND

Nolasco entered the United States on January 11, 2003, as a nonimmigrant visitor. Over a year later, Nolasco filed an application for asylum and withholding of removal. At her removal hearing, Nolasco testified about the incidents that led her to leave Venezuela.

Nolasco taught at "the basic national school" where she opposed political changes to the educational program. Nolasco was also a member of Un Nuevo Tiempo, a group that worked to defend democracy and human rights and opposed the regime of Hugo Chavez. Nolasco received notes in her office and on her car that referred to her as a "traitor." The school principal asked Nolasco to resign. She refused, but was not fired. On one occasion, all of her car tires were flat and a note on her car said, "this is your last opportunity, get away, do not come back." The notes were unsigned and contained the words "the revolution."

2

On another occasion, a group of women confronted Nolasco. One of the women brandished a knife and told Nolasco "it looks like you did not understand the message." As Nolasco drove home, a man riding a motorcycle and wearing a red t-shirt slowed as he approached Nolasco's car, "shot once," and sped away. Nolasco did not know any of her assailants, but she recalled that the man on the motorcycle wore a type of shirt common to members of the Bolivarian Circles, a group that supported Chavez.

Nolasco also received calls on her home and cellular telephone that threatened to harm her and her relatives. The callers did not identify themselves, but used the words "the revolution" and Nolasco believed they were members of the Bolivarian Circles. Nolasco explained that she did not move to a different location inside Venezuela because members of the Bolivarian Circles lived throughout the country. After Nolasco resided in the United States, her family told her that conditions had worsened and cautioned her to not return to Venezuela.

The immigration judge ruled that Nolasco's application for asylum was untimely and denied Nolasco's application for withholding of removal and relief under the Convention. The judge found that Nolasco failed to show either that her life or freedom would be threatened due to her political opinion or that she was a victim of past persecution. The judge found that Nolasco was unable either to identify the individuals who threatened or attempted to harm her as members of the

3

Bolivarian Circles or establish that she was threatened based on her political activities.

The Board of Immigration Appeals affirmed. The Board decided that Nolasco was ineligible for asylum and she did not establish she was subject to past persecution or a well-founded fear of future persecution. The Board also decided that Nolasco failed to establish that she would, more likely than not, be tortured when she returned to Venezuela.

## II. STANDARD OF REVIEW

We review the decision of the Board to determine whether it is "'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001) (quoting Lorisme v. INS, 129 F.3d 1441, 1444–45 (11th Cir. 1997)). "To reverse [those] fact findings, we must find that the record not only supports reversal, but compels it." Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003) (citing Fahim v. U.S. Att'y Gen., 278 F.3d 1216, 1218 (11th Cir. 2002)).

## III. DISCUSSION

Nolasco challenges two of the three decisions of the Board. Nolasco challenges the denial of her application for withholding of removal and her argument for relief under the Convention. Nolasco does not challenge the finding that her application for asylum was untimely, which we lack jurisdiction to review.

4

Mendoza, 327 F.3d at 1287.

Nolasco's burden is well-established. To qualify for withholding of removal, an alien must prove that her "life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion." Mendoza, 327 F.3d at 1287 (citing 8 U.S.C. § 1231(b)(3)(A)). The alien must establish that she "more-likely-than-not would be persecuted . . . upon [her] return to the country in question." Id. (citing Fahim, 278 F.3d at 1218). An applicant for relief under the Convention must "establish that it is more likely than not that . . . she would be tortured if removed to the proposed country of removal." Al Najjar, 257 F.3d at 1303 (quoting 8 C.F.R. § 208.16(c)(2)) (internal quotation marks omitted). Torture is confined to those acts inflicting "severe pain and suffering, whether physical or mental" committed at the hands, under the direction, or with the acquiescence of "a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1).

Substantial evidence supports the decision that Nolasco did not suffer political persecution. The anonymous telephone calls and notes constitute harassment but do not rise to the level of persecution. See Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1238 (11th Cir. 2006); Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005). Nolasco was not present when her tires were flattened, and she did not even testify that her tires were damaged. See Sepulveda,

5

401 F.3d at 1231.  In the incidents that involved the group of women and the motorcycle gunman, Nolasco could not identify either the individuals involved or establish that their attacks were politically motivated.  Nolasco also was not harmed in any incident.  See Silva, 448 F.3d at 1234, 1238.

Nolasco also is not entitled to a presumption of a well-founded fear of future persecution because she failed to establish that she suffered past persecution and she offered no proof that she would be singled out due to her political beliefs if she returned to Venezuela.  See 8 C.F.R. § 208.16(b)(1); Sepulveda, 401 F.3d at 1231.  Nolasco did not allege that the Venezuelan authorities engaged in a pattern or practice to persecute members of Un Nuevo Tiempo.  See 8 C.F.R. § 208.16(b)(2).  She testified that she has family in Venezuela who have not been threatened or harmed.  See Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1259 (11th Cir. 2006).

Substantial evidence also supports the finding that Nolasco will not likely be tortured upon her return to Venezuela.  "The burden of proof for an applicant seeking withholding of removal under the Convention, like that for an applicant seeking withholding of removal under the statute, is higher than the burden imposed on an asylum applicant."  Al Najjar, 257 F.3d at 1303; see 8 C.F.R. § 208.16(c)(2).  Because Nolasco failed to establish a well-founded fear of persecution, she also cannot establish that she would suffer "torture."  See Al Najjar, 257 F.3d at 1303–04.

6

## IV. CONCLUSION

Nolasco's petition for review is **DENIED**.