[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-10209
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 25, 2012
JOHN LEY
CLERK

Agency No. A079-469-468

NINETA NDREU,
ENGELEDA NDREU,
TOM NDREU,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(January 25, 2012)

Before BARKETT, MARCUS and FAY, Circuit Judges.

PER CURIAM:

Nineta Ndreu, her husband Tom Ndreu, and their daughter Engeleda Ndreu,

all natives and citizens of Albania, seek review of the Board of Immigration

Appeals's ("BIA") final order affirming the Immigration Judge's ("IJ") denial of

their application for asylum, withholding of removal, and relief under the United

Nations Convention Against Torture and Other Cruel, Inhuman or Degrading

Treatment or Punishment ("CAT"), 8 U.S.C. §§ 1158(a), 1231(b)(3); 8 C.F.R.

§ 208.16(c).[1]  For the reasons stated below, we deny the Ndreus' petition for

review.

## I.  FACTS AND PROCEEDINGS

Nineta and Tom Ndreu entered the United States in 2000 on non-immigrant

visas, and Engeleda Ndreu entered the country separately in 2001.  Subsequently,

the Department of Homeland Security served all three with Notices to Appear

("NTA"), charging them as removable pursuant to INA § 237(a)(1)(B), 8 U.S.C.

§ 1227(a)(1)(B), for remaining in the United States longer than permitted.

However, at the removal hearing, Engeleda testified that she entered the United

States using fraudulent documents, whereupon the government amended her NTA,

charging her as removable under INA § 212(a)(6)(A)(i), 8 U.S.C.

---

[1]  The Ndreus do not argue in their brief to this Court that they were entitled to CAT relief, and, therefore, they have abandoned the claim. *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) ("When an appellant fails to offer argument on an issue, that issue is abandoned.").

§ 1182(a)(6)(A)(i), for being present in the country without having been admitted or paroled. Engeleda expressly conceded to this new charge after consulting with her lawyer.

Previously, at the start of the removal hearing, the IJ introduced into evidence the 2006 Profile of Asylum Claims and Country Conditions for Albania, issued by the U.S. Department of State. The IJ read aloud several excerpts from this report, which stated that there had been no outbreaks of political violence in Albania since 1998, that neither the government nor the major political parties engaged in "policies of abuse or coercion against their political opponents," and that, despite serious political repression in the past, there were no indications of "systemic political persecution in Albania at the present time." Also introduced into evidence was the State Department's 2008 Human Rights Report for Albania, which provided, in relevant part, that there had been "no reports of politically motivated disappearances" in Albania, and "no reports of political prisoners or detainees."

During the hearing, Tom Ndreu presented most of the substantive testimony, describing how he and his family had been persecuted for their support of the Democratic Party in Albania by members of the opposing Socialist Party. The most serious incidents of persecution included the non-fatal shooting of

3

Tom's daughter-in-law, the detonation of a bomb inside Tom's shop, which was located in same building where he lived, and the murder of his cousin, who was a Democratic Party activist.

On cross-examination by the government, Tom acknowledged that the Democratic Party had been in control of Albania since 2005 and that he and his family had not directly experienced any problems when the Democratic Party last controlled the country in the mid-1990s. Relying on this information, as well as the State Department's country reports, the government argued in closing that, even if the Ndreus had suffered past persecution, they had no well-founded fear of future persecution.

The IJ issued an oral decision, finding that the Ndreus' experiences in Albania amounted to past persecution and created a presumption of future persecution. However, the IJ also found that the government had rebutted this presumption by showing that country conditions in Albania had fundamentally changed since the Ndreus left in 2000. Accordingly, the IJ denied the Ndreus' claims for relief and ordered them removed from the United States.

The Ndreus appealed to the BIA, and the Board affirmed and adopted the IJ's decision. The Ndreus filed a timely petition for review of that order. Subsequently, they moved the BIA to reconsider its decision, but the BIA denied

their motion, finding no error in its original dismissal of their appeal. The Ndreus did not file a petition for review of the BIA's order denying reconsideration.

## II. ANALYSIS

The Ndreus raise three main arguments in their petition for review.[2] First, they contend that the IJ erred in failing to shift the burden of proof to the government to rebut the presumption of a well-founded fear of future persecution. Second, they argue that one report by the U.S. Department of State was insufficient to show fundamentally changed country conditions in Albania. Finally, they assert that the government violated Engeleda's due process rights when it amended her NTA during the removal hearing, even though she never admitted to entering without inspection and did not have time to testify or present evidence of her entry.

---

[2] The Ndreus also raise several issues that are not subject to our review. First, the Ndreus challenge the BIA's order denying their motion for reconsideration. Because they did not file a petition for review of that order, we lack jurisdiction to review it. *See* INA § 242(a)(5), 8 U.S.C. § 1252(a)(5) ("[A] petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal."). Moreover, the Ndreus argue that the IJ did not allow them an opportunity to show eligibility for "humanitarian asylum." *See infra* note 3. We lack jurisdiction to review this issue because the Ndreus did not raise it before the BIA, thereby failing to exhaust their administrative remedies. *See Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250-51 (11th Cir. 2006) (holding that we lack jurisdiction to review claims that have not been raised before the BIA, even where the BIA addresses them *sua sponte*). Finally, the Ndreus characterize one of their issues as "whether country conditions in Albania have changed so much that the Petitioners no longer have an objective well-founded fear" of returning. However, they make no substantive arguments regarding conditions in Albania, or whether those conditions have, in fact, fundamentally changed since they left. Thus, they have abandoned any claims in this regard. *See Sepulveda*, 401 F.3d at 1228 n.2.

We generally review only the BIA's opinion as the final judgment, but where the BIA "expressly adopts the immigration judge's reasoning," we review the IJ's decision as well. *Todorovic v. U.S. Att'y Gen.*, 621 F.3d 1318, 1324 (11th Cir. 2010). In this case, the BIA expressly adopted the IJ's decision that changed circumstances in Albania rebutted the Ndreus' presumption of future persecution, and, therefore, we review both the BIA's and the IJ's decisions regarding this issue. *See id.*

We review the BIA's and the IJ's factual determinations under the highly deferential substantial-evidence test and will affirm if their decisions are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350-51 (2009) (quotation omitted). The IJ's and the BIA's legal conclusions are reviewed *de novo*. *Kazemzadeh*, 577 F.3d at 1350.

To be eligible for asylum, an alien must establish, with credible evidence, either past persecution or a well-founded fear of future persecution on account of political opinion or another protected ground. *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1230-31 (11th Cir. 2005).[3] An alien who has established past

_____

[3] An alien may qualify for asylum based on past persecution alone, without showing a well-founded fear of future persecution, if the alien establishes "compelling reasons for being unwilling or unable to return to the country arising out of the severity of the past persecution," or

6

persecution "shall also be presumed to have a well-founded fear of persecution on the basis of the original claim." 8 C.F.R. § 1208.13(b)(1). However, this presumption may be rebutted and asylum denied if the IJ finds, by a preponderance of the evidence, that "[t]here has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution in the applicant's country of nationality," or that internal relocation is possible and reasonable. *Id.* § 1208.13(b)(1)(i)(A)-(B). The regulations expressly place the burden of proof on the government to rebut the presumption of a well-founded fear of persecution. *Id.* § 1208.13(b)(1)(ii); *Sanchez Jimenez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1232 (11th Cir. 2007) ("[T]he government bears the burden to show by a preponderance of the evidence . . . that conditions in the country have changed.").

Regarding withholding of removal, the pertinent regulations are virtually identical to those for asylum. *See* 8 C.F.R. § 1208.16(b)(1). Specifically, if an alien establishes past persecution, a presumption arises that the alien's "life or freedom would be threatened" upon removal, and the government may rebut that

---

a "reasonable possibility that he or she may suffer other serious harm upon removal." 8 C.F.R. § 1208.13(b)(1)(iii). This provision describes what is known as "humanitarian asylum," which may be granted only if the alien shows that his past persecution was "sufficiently severe or had long-lasting effects." *Mehmeti v. U.S. Att'y Gen.*, 572 F.3d 1196, 1200-01 (11th Cir. 2009).

presumption by showing, through a preponderance of the evidence, that there has been "a fundamental change in circumstances such that the applicant's life or freedom would not be threatened" after deportation. *Id.* § 1208.16(b)(1)(i)-(ii).

## A.  Burden-shifting

In this case, the IJ properly placed the burden of proof on the government to show that conditions in Albania had fundamentally changed, such as to rebut the Ndreus' presumption of future persecution.  In his oral decision, the IJ expressly stated that the government had established changed country conditions in Albania and rebutted the Ndreus' presumption of future persecution.  The government concedes that it did not submit the determinative country reports, but it is undisputed that these reports were, in fact, submitted into evidence without objection, and the regulations do not prohibit the IJ from *sua sponte* placing such reports into evidence.  *Cf.  Lorisme v. INS*, 129 F.3d 1441, 1445 (11th Cir. 1997) (stating that the BIA acted appropriately by taking "some measure of administrative notice" regarding country conditions).

The government may meet its burden of proof by relying on evidence already before the IJ, regardless of who submitted such evidence.  The record indicates that the government tried to meet its burden of proving changed country conditions by cross-examining Tom and by making relevant arguments in closing.

8

In light of the above, we conclude that the IJ did not fail to shift the burden of proof to the government to rebut the Ndreus' presumption of future persecution, as required by the regulations. *See* 8 C.F.R. §§ 1208.13(b)(1)(ii), 1208.16(b)(1)(ii).

### B. Sufficiency of the Country Reports

To begin, the Ndreus are mistaken in their assertion that the IJ relied on only one country report for a finding of changed country conditions, as the IJ expressly relied on both the 2006 Profile of Asylum Claims and the 2008 Human Rights Report. We have previously stated that the agency may "rely heavily" on these sources, *Djonda v. U.S. Att'y Gen.*, 514 F.3d 1168, 1175 (11th Cir. 2008), and nothing in our precedent suggests that two country reports issued by the State Department are *per se* insufficient to establish changed country conditions to rebut a presumption of future persecution, *see Mehmeti*, 572 F.3d at 1198-1200 (holding that substantial evidence supported the BIA's finding of changed country conditions in Albania where the alien argued that the IJ erred in relying solely on reports prepared by the U.S. Department of State).

In *Imelda v. U.S. Att'y Gen.*, we stated that the "use of country reports cannot substitute for an analysis of the unique facts of each applicant's case" and that "information about general changes in a country is insufficient." 611 F.3d 724, 729 (11th Cir. 2010) (quotation and alteration omitted). Rather, "the

9

determination of whether the presumption [of future persecution] is rebutted requires an individualized analysis that focuses on the specific harm suffered and the relationship to it of the particular information contained in the relevant country reports." *Id.* (quotation omitted).

In his decision, the IJ described in detail how the Ndreus were persecuted in Albania, mostly due to their support of the Democratic Party and their opposition to the Socialist Party. In finding that country conditions had fundamentally changed, the IJ relied on specific portions of the country reports, which indicated that Albania suffered from little political violence or repression at the present time and that major political parties, such as the Socialist Party, no longer mistreated their political opponents. Therefore, the IJ acted in accordance with *Imelda* and considered the specific harm suffered by the Ndreus and its relationship to particular information contained in the relevant country reports. *See Imelda*, 611 F.3d at 729.

## C. Due Process

Where the BIA has not addressed an issue put before it, we generally remand the case back to the agency, except in "rare circumstances." *Calle v. U.S. Att'y Gen.*, 504 F.3d 1324, 1329 (11th Cir. 2007). Such "rare circumstances" may exist where, as here, the unaddressed issue is legal and procedural, rather than

10

factual. *See id.* at 1329-30 (reviewing the unaddressed issue of whether the alien, in moving the BIA to reconsider its earlier decision, sufficiently specified errors of fact or law and supported the motion by pertinent authority). Accordingly, we may review the unaddressed issue of whether Engeleda suffered a due process violation when the government amended her NTA at the removal hearing.

Our review is brief, however, because contrary to the Ndreus' assertions, Engeleda expressly conceded removability under the government's amended NTA, admitting that she was removable pursuant to INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien who entered without inspection. Moreover, the record shows that Engeleda consulted with her attorney before pleading to the amended charge and had ample opportunity to testify regarding her entry. Accordingly, no due process violation occurred in this regard.

Having reviewed the record and the parties' briefs, we deny the Ndreus' petition for review.

**PETITION DENIED.**