[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 21, 2008
THOMAS K. KAHN
CLERK

_____

No. 08-10339
Non-Argument Calendar

_____

Agency Nos. A95-583-417
A95-583-418

HEN NIE TAN,
SIN TIONG GO,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(August 21, 2008)**

Before BIRCH, MARCUS and PRYOR, Circuit Judges.

PER CURIAM:

Hen Nie Tan and Sin Tiong Go, who are Indonesians, petition for review of a final order of the Board of Immigration Appeals ("BIA") denying Tan's claim for asylum, withholding of removal, and CAT relief and Go's claim for cancellation of removal.[1] On appeal, Tan argues that if she were returned to Indonesia, she would be persecuted on account of her race, which is Chinese, and religion, which is Christian. She contends that she demonstrated that she suffered past persecution on account of her race and religion, and as a result is entitled to a rebuttable presumption of future persecution, and that she has provided ample evidence to support a finding that she would more likely than not face persecution if returned to Indonesia.

Because Tan is unable to demonstrate the existence of past persecution or that she is more likely than not to suffer future persecution on account of her ethnicity or religion, she has failed to demonstrate eligibility for withholding of removal. Accordingly, we DENY the petition.

## I. BACKGROUND

Tan filed an application for asylum and withholding of removal in June of 2002. Administrative Record ("AR") at 254. She claimed that she had Indonesian

---

[1] On appeal, Tan does not present arguments concerning her asylum claim or her relief under CAT, and Go does not present arguments concerning the denial of his claim for cancellation of removal. As a result, those issues are abandoned. See Sepulveda v. U.S. Attorney General, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (holding that, when an appellant fails to offer an argument on an issue, that issue is abandoned).

citizenship, her ethnicity was Chinese, and her religion was Christianity.  Id. at

247.  She entered the United States in 1995.  Id.  She stated that she married Go in

December of 1996, that he was also an Indonesian citizen of Chinese ethnicity, and

that he was included in the application.[2]  Id. at  249-250.  Although she lived in

Jakarta for several years, she now sought asylum because of fear of persecution on

account her ethnicity and religion and that many of her friends and relatives had

been persecuted, tortured, and killed.  Id. at 250.  She and her family had been

mistreated and threatened by members of Muslim organizations because of

activities with her Christian church.  Id. at 251.  She stated that her application was

filed more than one year after her arrival because of changed conditions in

Indonesia.  Id. at 253.

Tan received notice to appear in March of 2004.  Id. at 374.  She was

charged with having entered the country lawfully on nonimmigrant B-2 status in

January 1995 but remaining beyond the allowed six months.  Id.

In support, Tan submitted an article from the 9 October 2000 issue of

Business Week entitled "Wage of Hatred," which detailed the economic and

psychological effect of riots in Jakarta and elsewhere by fundamentalist Muslims

---

[2]Because Go had arrived four years prior to Tan and, as a result, met the prerequisites for cancellation of removal, he sought relief independently of Tan in addition to being included as a derivative party on her asylum claim.  See AR at 395-401.  The Immigration Judge ("IJ") and BIA ultimately denied his application for cancellation of removal.  See id. at 391, 379.

and native Indonesians against Chinese Indonesians.  Id. at 242.  Also submitted was an article from Human Rights Watch entitled "The Damage Debate on Rapes of Ethnic Chinese Women" which detailed the beginning of violence in May of 1998 targeted at Chinese-owned shops and the subsequent rise in violence against Chinese women.  Id. at 231-32.

Tan supplied a supplemental statement in support of her application which listed the incidents of persecution she suffered when in Indonesia.  Id.  at 190-91.  When she was in school, she was treated differently by both students and teachers on account of her ethnicity.  Id. at 190.  While waiting for a bus, she was fondled by native Indonesians and once, when riding a bus, the native Indonesian bus driver refused to stop for her at her requested stop.  Id.  She was also told to stop having Christian fellowship meetings in her house.  Id.  She also explained that Chinese Indonesians had to pay exorbitant fees to get motor vehicle licenses.  Id.

According to the 2004 Indonesia Country Report from the State Department ("Country Report")  the Indonesian government never established accountability for the 1998 riots.  Id. at 156.  The Country Report noted that the political and economic tensions in some of the provinces continued to cause sectarian violence resulting unlawful killings, and that ten churches, three more than the previous year, had been attacked, including in the Jakarta communities of Ciputat and Pamulang.  Id. at 163.  The Country Report also noted that in some provinces, such

4

as Ambon, Maluku, North Maluku, and Central Sulawesi, interreligious cooperation remained poor. Id. The Country Report stated that ethnic Chinese made up three percent of the population and that instances of discrimination of Chinese declined compared to previous years. Id. at 171.

Also submitted was the State Department's International Religious Freedom Report for Indonesia for 2005, which noted that sporadic incidents of possible inter-religious strife continued in a couple of Indonesian provinces, including Central Sulawesi and the Moluccas, but at a significantly lower rate than the previous reporting period. Id. at 177. The Freedom Report noted that the province of Aceh was authorized to implement Islamic law, but the remainder of Indonesia was not. Id. The 2005 Freedom Report noted that 5.9% of the Indonesian population was Protestant and 3.1% was Catholic. Id. It noted that local police displayed significantly more willingness to indict security forces allegedly involved in religious violence, but violence between Christians and Muslims continued during the period covered by this report. Id. at 184-186.

Tan conceded the facts alleged in the notice to appear and conceded removability. Id. at 75. At an asylum hearing in January of 2006, Tan testified that when she was in grade school she was treated differently than students from the indigenous populations and in high school she was chased by someone who wanted to do inappropriate things to her. Id. at 96. She never complained to any

officials because every time she had to go to government offices there would always be problems because she was Chinese. Id. at 103. When she tried to get her driver's license, she was made to wait longer than native Indonesians and ignored by the employees. Id. at 103-104. She stated that she went to Catholic church in Indonesia, that she joined in middle school by joining small faith groups, but she was not baptized until she came to the United States. Id. at 95-96, 109. She admitted that she was never physically harmed, but she was robbed once by Muslims while riding a bus, although she did not actually see them rob her, she assumed that it must have been Muslims because Chinese Indonesians do not usually ride the bus. Id. at 110-11. On cross-examination she also admitted that she was never arrested, detained, or tortured by the government of Indonesia and that her life was never threatened, although her liberty was, while living in Indonesia. Id. at 118-29. She also stated that the last incident inspiring fear in her was in 1993, more than eight years before her present application, although she always had fear of something happening, and that she left in 1995. Id. at 120.

The IJ issued his decision and denied asylum status because the application from Tan and Go was beyond the one year limitation period. Id. at 62. The IJ found Tan credible, but none of the instances amounted to persecution and would not amount to an asylum claim, let alone a withholding claim. Id. at 63. The IJ

6

then found that CAT relief was unavailable, and in a separate opinion, denied Go's application for cancellation of removal . Id. at 64, 52.

Tan and Go appealed to the BIA and argued that the one year limitation period should not have applied because of change in personal circumstances due to her marriage and child, and change in country conditions because Indonesia was more dangerous following September 11 and a rise in Christian and Muslim hostilities. Id. at 10-11. Tan also argued that there was past persecution because of the continuous discrimination and harassment she suffered, and that, she had a reasonable fear of future persecution because Chinese Indonesians are regularly threatened with extinction and attacked. Id. at 11-12. Nevertheless, she did not argue that there was a pattern or practice of persecuting Chinese Christians in Indonesia. Id. at 10-12. Go argued that the IJ erred because he should have considered the political and economic conditions of the country when determining economic hardship, and the current conditions weighed in favor of finding an extreme hardship. Id. at 14.

The BIA adopted and affirmed the IJ's decision. Id. at 2. The BIA agreed that Tan failed to establish past persecution and that she failed to demonstrate a clear probability of future persecution or a pattern and practice of persecution. Id. As to Go, the BIA affirmed the IJ's decision. Id. at 379.

Tan and Go timely filed a petition for review with this court. Administrative Papers at 2.

## II. **DISCUSSION**

On appeal, Tan argues that a reasonable factfinder would have been compelled to find that it was more likely than not that she would be persecuted if she returned to Indonesia. She contends that her testimony makes it clear that she would suffer persecution if returned to Indonesia and that the country reports support her testimony. She also argues that there are numerous bombings on churches that she has personal knowledge of, and that there is a clear probability she would be harmed if returned to Indonesia.

To the extent the BIA's decision is based on legal determinations, the standard of review is de novo. D-Muhumed v. U.S. Attorney General, 388 F.3d 814, 817 (11th Cir. 2004). The BIA's findings of fact are reviewed under the substantial evidence test, and we "must affirm the [IJ's] decision if it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001) (quoting Lorisme v. INS, 129 F.3d 1441, 1444-45 (11th Cir. 1997). We view "the record evidence in the light most favorable to the agency's decision and draws all reasonable inferences in favor of that decision." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc). Under this highly deferential standard of

review, the IJ's decision can be reversed only if the evidence "compels" a reasonable fact finder to find otherwise. Sepulveda v. U.S. Attorney General, 401 F.3d 1226, 1230 (11th Cir. 2005).

When the BIA issues its own opinion, we review only the decision of the BIA, except to the extent the BIA expressly adopts the IJ's decision. Rodriguez Morales v. U.S. Attorney General, 488 F.3d 884, 890 (11th Cir. 2007). In the present case, the BIA affirmed and adopted the IJ's opinion, and therefore we will review the IJ's opinion.

An alien is entitled to withholding of removal under the INA if she can show that her life or freedom would be threatened on account of, inter alia, her race or religion.[3] INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A). For withholding of removal, the applicant has the burden of showing that it is "more likely than not" she will be persecuted or tortured upon return to her country. Sepulveda, 401 F.3d at 1232. A showing of past persecution creates a rebuttable presumption of a well-founded fear of future persecution. Id. at 1231. Persecution is an extreme concept,

---

[3] An applicant for withholding of removal need not show that she would be singled out for persecution if she can demonstrate a pattern or practice of persecution of persons similarly situated to her on account of, inter alia, race or religion. 8 C.F.R. § 208.13(b)(2)(iii). In the instant case, Tan did not raise the pattern or practice argument before the BIA, and therefore we are without jurisdiction to review such an argument, even though the BIA sua sponte addressed it. See Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250 (11th Cir. 2006) (holding that we lack jurisdiction to review a claim not brought before the BIA even when the BIA addresses it sua sponte). In addition, she does not raise the argument on appeal, so it is deemed abandoned. See Sepulveda v. U.S. Attorney General, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

requiring more than a few isolated incidents of verbal harassment or intimidation, and mere harassment does not amount to persecution. Id.

Tan failed to demonstrate that a reasonable factfinder would have been compelled to find that it was more likely than not that she would have faced persecution if returned to Indonesia. She failed to establish past persecution because none of the events to which she referred, including the robbery, the discrimination, and the problems at the department of motor vehicles, rose to the level of extreme conduct that persecution encompasses. See AR at 96, 103-04, 110-11; Sepulveda, 401 F.3d at 1231 (holding that persecution is an extreme concept requiring more than mere harassment). Indeed, she testified that she had never been physically harmed. See AR at 110. Thus, she was unable to establish past persecution and therefore unable to establish a rebuttable presumption of future persecution. See Sepulveda, 401 F.3d at 1231 (holding that a showing of past persecution creates a rebuttable presumption of future persecution).

She also failed to adduce evidence that would compel a reasonable factfinder to find that it was more likely than not she would face persecution upon her return to Indonesia. See id. at 1232 (holding that the standard for withholding of removal is a showing that it is more likely than not that a petitioner will face persecution upon her return). Tan relies on stories of attacks on churches, but the Country Reports indicate that while attacks on churches had risen from three to ten, overall

incidence of inter-religious strife had decreased. <u>See</u> AR at 163, 177.  Moreover,

the picture as to development of inter-religious cooperation was mixed at best, with

some areas demonstrating increased cooperation and others demonstrating

decreased cooperation.  <u>See</u> AR at 163.  Furthermore, incidents against ethnic

Chinese had decreased in the last year.  <u>See</u> AR at 171.  Thus, the 2004 Country

Reports indicated a mixed picture at best, which would not compel a reasonable

factfinder to conclude that Tan would face discrimination.  <u>See</u> <u>Sepulveda</u>, 401

F.3d at 1230 (holding that the IJ's decision can be reversed only if the evidence

compels a reasonable fact finder to find otherwise).  As a result, Tan has failed to

demonstrate that she is eligible for withholding of removal.

## III.  <u>CONCLUSION</u>

For the reasons set out above, we find that Go has abandoned his claim for

cancellation of removal and that his wife, Tan, is not entitled to the relief she seeks.

**PETITION DENIED.**