[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-14083
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 25, 2010
JOHN LEY
CLERK

Agency Nos. A098-740-350, A098-740-351

JOSE MIGUEL CORDERO,
GRACIELA LILIANA VELAZCO,
JOSE SEBASTIAN CORDERO,
CAMILA LUCIANA CORDERO,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(March 25, 2010)

Before BARKETT, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Jose Miguel Cordero, the lead petitioner, and his wife and two minor children, derivative beneficiaries (collectively "petitioners"), are Peruvian nationals petitioning for review of the Board of Immigration Appeal's ("BIA") final order affirming the Immigration Judge's ("IJ") order denying their application for asylum and withholding of removal under the Immigration and Nationality Act ("INA"), and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"). 8 U.S.C. §§ 1158, 1231; 8 C.F.R. § 208.16(c). On appeal, the petitioners argue that substantial evidence does not support the IJ's and BIA's conclusion that they failed to meet the burden for asylum, withholding of removal, and CAT relief. After careful review, we dismiss the petition in part, and deny it in part.

We review subject-matter jurisdiction de novo. Frech v. U.S. Att'y Gen., 491 F.3d 1277, 1280 (11th Cir. 2007). We review factual findings under the substantial evidence test. Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286 (11th Cir. 2005). Under the substantial evidence test, we must affirm the IJ's and BIA's decisions if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001) (quotation omitted). "To reverse a factual finding . . ., [we] must find not only that the evidence supports a contrary conclusion, but that it compels one." Farquharson v. U.S. Att'y Gen., 246 F.3d 1317, 1320 (11th Cir. 2001). The

2

fact that evidence in the record may also support a conclusion contrary to the administrative findings is not enough to justify a reversal. Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc).

When the BIA issues a decision, we review only that decision, except to the extent that the BIA expressly adopts the IJ's decision. Al Najjar, 257 F.3d at 1284. To the extent that the BIA adopts the IJ's reasoning, we review the IJ's decision as well. Here, the BIA followed the IJ's reasoning in support of the denial of withholding of removal and CAT relief. Accordingly, we review the decisions of both the BIA and the IJ. See id.

First, we lack jurisdiction to address the petitioners' argument that even though they filed the asylum application after the one-year deadline, the delay was excused by changed or extraordinary circumstances. An alien may apply for asylum if he "demonstrates by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). An untimely application may be considered by the agency if the alien can demonstrate the "existence of changed circumstances which materially affect" his eligibility or "extraordinary circumstances relating to the delay in filing [his] application." 8 U.S.C. § 1158(a)(2)(D). Nevertheless, "[n]o court shall have jurisdiction to review any [agency] determination" regarding timeliness. Id. § 1158(a)(3). Likewise, we have held that the statutory language

3

precludes federal court review of determinations made pursuant to § 1158(a)(2). Fahim v. U.S. Att'y Gen., 278 F.3d 1216, 1218 (11th Cir. 2002). Moreover, while the Real ID Act of 2005 added a new provision providing jurisdiction over "constitutional claims or questions of law," that new provision did not affect our prior precedents regarding our lack of jurisdiction over timeliness issues. Pub. L. No. 109-13, § 106(a)(1)(A)(iii), 119 Stat. 231, 310 (codified at 8 U.S.C. § 1252(a)(2)(D)); Chacon-Botero v. U.S. Att'y Gen., 427 F.3d 954, 957 (11th Cir. 2005).

As applied here, we do not have jurisdiction to review the IJ's and BIA's findings that the petitioners' asylum claim was untimely and that the delay was not excused by changed or extraordinary circumstances. See Chacon-Botero, 427 F.3d at 957. We therefore dismiss the petition for review as to the asylum claim.

Next, we reject the petitioners' argument that they have sufficiently established past political persecution and future persecution for purposes of withholding of removal, and that the IJ failed to conduct a separate analysis regarding their CAT claim. An alien may qualify for withholding of removal by showing that his "life or freedom would be threatened in [his] country [of origin] because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). "The alien bears the burden of demonstrating that it is more likely than not that she will be persecuted or tortured

4

upon being returned to her country." Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1232 (11th Cir. 2005) (quotation omitted). "The [immigration] statute protects against persecution not only by government forces but also by nongovernmental groups that the government cannot control." Sanchez v. U.S. Att'y Gen., 392 F.3d 434, 437 (11th Cir. 2004) (quotation and bracket omitted).

An alien may satisfy his burden of proof for withholding of removal in two ways. Tan v. U.S. Att'y Gen., 446 F.3d 1369, 1375 (11th Cir. 2006). First, an alien may establish past persecution based on a protected ground. Id. Once the alien demonstrates past persecution based on one of the five enumerated grounds, it is presumed that his life or freedom would be threatened in the future, unless the presumption is rebutted by a showing of a fundamental change in circumstances or the alien's ability to avoid a future threat via relocation to another part of the country of removal. 8 C.F.R. § 208.16(b)(1)(i). In "determining whether an alien has suffered past persecution, the IJ must consider the cumulative effect of the allegedly persecutory incidents." De Santamaria v. U.S. Att'y Gen., 525 F.3d 999, 1008 (11th Cir. 2008). Second, an alien may establish that it is more likely than not that (1) he would be persecuted in the future on account of one of the five enumerated grounds; and (2) he could not avoid this future threat to his life or freedom by relocating, if under all the circumstances it would be reasonable to

expect relocation. 8 C.F.R. § 208.16(b)(2). The fear of future persecution must be "subjectively genuine and objectively reasonable." Al Najjar, 257 F.3d at 1289.

Neither the INA nor the regulations define "persecution," but we have indicated that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and that mere harassment does not amount to persecution." Sepulveda, 401 F.3d at 1231 (quotations and alteration omitted).

To be entitled to relief under the CAT, an applicant must establish that it is "more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). "Torture" is defined as:

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

Id. § 208.18(a)(1). Acquiescence "requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." Id. § 208.18(a)(7). To qualify for CAT relief, an applicant must meet standards more stringent than those for asylum eligibility. Rodriguez Morales v. U.S. Att'y Gen., 488 F.3d 884, 891 (11th Cir. 2007).

6

Substantial evidence supports the IJ's and BIA's findings that Cordero failed to qualify for withholding of removal and CAT relief. The record shows the following five incidents which Cordero claimed to be examples of political persecution: (1) Cordero's home was destroyed; (2) his wife was followed by a pickup truck on her way home; (3) he received anonymous telephone threats; (4) his car window was shattered by a stone thrown by motorists; and (5) he received two notices to appear from the Peruvian judiciary. However, the IJ properly found that, even when considering the cumulative effect of all the incidents, the petitioners failed to demonstrate either past persecution or the likelihood of future persecution on account of Cordero's political beliefs because: (1) none of the alleged incidents amounted to persecution; and (2) most incidents could have been caused by motives other than targeting his political beliefs.

Indeed, the events above do not rise to the extreme level of past persecution. See Sepulveda, 401 F.3d at 1231 (holding that a few isolated incidents of harassment and intimidation, including menacing telephone calls and a bomb that exploded at the petitioner's workplace, do not amount to persecution). Similar to the petitioner in Sepulveda, Cordero encountered isolated incidents in a span of three years, from 1999 to 2002, where he and his wife faced harassment and threats, but never extreme measures such as detentions, arrests, or physical harm. See id. Furthermore, even when considered collectively, Cordero's persecutory

7

allegations pale in comparison to those of the petitioners in Djonda and Zheng, who faced more severe treatments and abuses at the hands of government officials, such as lengthy detentions and physical beatings, but were still deemed by this Court to have failed to demonstrate past persecution sufficiently. See Djonda v. U.S. Att'y Gen., 514 F.3d 1168, 1174 (11th Cir. 2008); Zheng v. U.S. Att'y Gen., 451 F.3d 1287, 1290-91 (11th Cir. 2006).

In addition, substantial evidence does not compel reversal of the IJ's finding that petitioners failed to demonstrate the requisite nexus between some of the alleged incidents and his political opinion. See Sanchez, 392 F.3d at 437-38. Specifically, Cordero testified that his house was burglarized once while the occupants were away, but he had no knowledge of the identity of the transgressors and he also failed to proffer any evidence tying the break-in to his political opinion, except for testifying that he had received a subsequent telephone threat. Cordero likewise failed to show that the incident involving his wife was related to his political opinion because he admitted that he did not know for a fact that the offenders were actually Toledo supporters. Finally, Cordero could not show that the two notices to appear from the Peruvian judiciary constituted political persecution because the record does not compel a different interpretation than the IJ's determination that he may have only been a target of an investigation for criminal behavior instead of persecution for his political beliefs. In fact, Cordero

8

admitted that the judiciary also sought his bank records in relations to allegations that he had received illegal funds.

The petitioners also failed to demonstrate an objectively reasonable fear of future persecution. Substantial evidence supports the IJ's finding that Cordero's fear was not objectively reasonable based on "circumstances surrounding his alleged [past] persecution and current conditions in Peru." As discussed above, most of the incidences of past harassment and threats alleged by Cordero were not necessarily related to his political opinion, and did not amount to persecution even when considered as a whole. Moreover, the Country Report contradicts Cordero's claim that he would suffer future persecution at the hands of the Toledo government or the judiciary if he returned to Peru, because the report indicates that: (1) although the Peruvian judiciary was widely perceived to be corrupt and inefficient, it was nonetheless independent; and (2) there were no reports of politically motivated killings, disappearances, or detentions of political prisoners by the government. Accordingly, the record does not compel a finding that Cordero's fear of future persecution was objectively reasonable.[1]

---

[1] Petitioners' arguments to the contrary are unsupported by the record. While they argue that the IJ erred in failing to find instances of past persecution or the likelihood of future persecution because both Cordero's life and freedom were "threatened" by the Toledo government on account of his political opinion, we have made clear that mere threats, such as anonymous death threats through the telephone, without more, do not rise to the level of persecution. See Sepulveda, 401 F.3d at 1231. Also, the record shows that Cordero's life was never actually threatened in the past, and that the possibility of losing his freedom may have primarily arisen from a judicial investigation into his illegal activities. Accordingly, petitioners'

Likewise, substantial evidence supports the IJ's and BIA's findings that it is unlikely that Cordero would be tortured if removed to Peru. See 8 C.F.R. § 208.16(c)(2). First, the record is bereft of evidence that Cordero would likely be tortured by the Toledo government or the judiciary in Peru. Also, as discussed above, Cordero had only encountered isolated incidences of harassment and threats that never amounted to physical harm in the past, which bolsters the IJ's and BIA's determination that he would unlikely be tortured in the future. Therefore, petitioners failed to meet their burden under CAT.

Finally, the petitioners' argument faulting the IJ and BIA for failing to consider their CAT claim sufficiently is without merit. The record shows that both the IJ and BIA independently considered the CAT claim before rejecting such claim based on the petitioners' failure to carry the burden.

Accordingly, we deny the part of the petition for review challenging the IJ's and BIA's denial of withholding of removal and CAT relief

**PETITION DISMISSED IN PART, DENIED IN PART.**

---

reliance on Lorisme v. INS, 129 F.3d 1441, 1445 (11th Cir. 1997), is both legally inaccurate and factually misplaced. In Lorisme, we affirmed the BIA's denial of the petition finding that the petitioner did not suffer past persecution and did not have a well-founded fear of future persecution. 129 F.3d at 1443, 1445. Further, petitioners cannot rely on Lorisme factually for the proposition that a fear of persecution could always be proven whenever the petitioner's life was threatened, because the record supports the IJ's and BIA's determination that Cordero was never physically threatened and had not faced any attempts on his life.

10