[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-10126

Non-Argument Calendar

_____

ABUL HASEM,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A203-653-968

_____

Before LUCK, LAGOA, and TJOFLAT, Circuit Judges.

PER CURIAM:

Abul Hasem seeks review of the Board of Immigration Appeals ("BIA") order affirming the Immigration Judge's ("IJ") denial of his application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"), based on the finding that he was not credible. After careful review of the record, we affirm.

I.

Abul Hasem ("Hasem"), a native and citizen of Bangladesh, entered the United States without permission on June 19, 2019. On July 29, 2019, an asylum officer conducted a credible fear interview of Hasem. Hasem testified that he left Bangladesh because he had been attacked for political reasons. More specifically, he testified that in Bangladesh he used to participate in the Liberal Democratic Party ("LDP") and that he had been attacked and threatened by members of the Awami League ("AL").

He testified that he was first attacked on November 20, 2017, while putting up party posters in front of the mall. He was approached by a group of people who told him that "if you don't leave LDP and join AL, you and your family will disappear." They then beat him with bamboo sticks until he fell to the ground and was helped by people from his neighborhood.

Hasem testified that he was once again attacked and threatened on March 10, 2018, as he was biking back from an LDP meeting. Six members of the AL hit him, caused him to fall off his bike, and then continued to hit him with sticks and bamboo for about thirty minutes. His attackers told him that "if you don't leave LDP, we will kill you, we will destroy your family" and also told him that "this is not over" as they were leaving.

Hasem testified that he was once again threatened on January 25, 2019. This time Hasem was threatened while in a store and told that "this was [his] last warning." He testified that he recognized three of the individuals threatening him and that they were well-known members of AL.

Hasem testified that he had not reported the attacks or threats to the police because the police would not help him. As evidence of this, he recounted an incident where AL members — including individuals who had attacked him —had come onto his property and cut down his trees while the police stood there and did nothing.

The asylum officer found that Hasem's testimony established a credible fear of prosecution based on his political opinion and that the Bangladesh government would be unable or unwilling to protect him from the AL.

In November of 2019, the Department of Homeland Security ("DHS") served Hasem with a notice to appear ("NTA"), charging him as removable under INA § 212(a)(7)(A)(i)(I), 8 U.S.C.

4                          Opinion of the Court                        21-10126

§ 1182(a)(7)(A)(i)(I) and INA § 212(a)(6)(A)(i), 8 U.S.C. §
1182(a)(6)(A)(i).

Hasem filed an application for asylum, withholding of removal, and CAT relief in January of 2020.  In his supporting documents, he reported many of the same events and details as in his credible fear interview.   However, during Hasem's testimony at his merits hearing on May 21, 2020, several discrepancies surfaced.[1]

First, while Hasem had stated in his credible fear interview that AL members hit him with wooden and bamboo sticks on March 10, 2018, in his 2020 merits hearing he testified that he was attacked with a knife and stabbed in the left hand.  Second, although Hasem testified that he received stiches on his hand for a stab wound, the medical records he supplied indicated that he received stitches on his head and elbow.  Third, while Hasem had stated in his asylum declaration that AL members had cursed at his wife during the tree cutting incident, during his merits hearing he testified that the AL members threatened his wife.

Ultimately, the IJ concluded that Hasem was not a credible witness due to the inconsistency of his testimony with other

---

[1] At the start of his merits hearing, Hasem stated that he was feeling ill and sought a continuance for the hearing.  In response to the IJ's inquiries, Hasem stated that he had fallen and hit his head 15 to 20 days before the hearing and that he was currently taking 21 medications.  The IJ denied the motion to continue because (1) there was no medical documentation from Hasem or counsel to support his claim and (2) Hasem had only told his counsel about the alleged illness the day prior to the hearing.

evidence in the record and the implausibility of his testimony. The IJ concluded that there was a "clear pattern" by Hasem to testify to more serious allegations than he had previously stated in either his asylum application, affidavit, or credible fear interview. Such a pattern was significant, the IJ concluded, because the specific discrepancies in Hasem's testimony touched upon "material aspects of [Hasem's] asylum claim: the level of harm that he experienced in Bangladesh and the motivations of the individuals who allegedly harmed [him]." Furthermore, the IJ found it implausible that Hasem, a minor member of the LDP, would have been so heavily targeted by the AL.

The IJ therefore denied Hasem's application for asylum, withholding of removal, and CAT protection on June 25, 2020. Hasem then appealed to the BIA. The BIA upheld the IJ's adverse credibility finding, noting that there were inconsistencies between his testimony, affidavit, and medical records. And while the BIA acknowledged there were multiple plausible explanations for why the AL might target such a minor party member as Hasem, it concluded that the IJ is permitted to make reasonable inferences among the plausible possibilities and explanations for discrepancies in the record.

6                    Opinion of the Court                    21-10126

Hasem now seeks review of the BIA's order affirming the IJ's denial of his application for asylum, withholding of removal, and CAT relief based on the finding that he was not credible.[2]

II.

Where the BIA issues its own decision, we ordinarily review only that decision, except insofar as the BIA expressly adopts the IJ's position. *Tang v. U.S. Att'y Gen.*, 578 F.3d 1270, 1275 (11th Cir. 2009). If the BIA implicitly relies on the IJ's decision and reasoning, however, we also review the IJ's decision to the extent that the BIA relied upon it. *See id.* Here, because the BIA agreed with the IJ's findings and relied upon aspects of the IJ's reasoning, we review both decisions. *Id.*

A factual determination that an alien is statutorily ineligible for asylum is reviewed under the substantial evidence standard, which requires that we affirm the finding if it is "supported by reasonable, substantial, and probative evidence on the record as considered as a whole." *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001) (quoting *Lorisme v. INS*, 129 F.3d 1441, 1444-45 (11th Cir. 1997)), *abrogated on other grounds by Patel v. U.S. Att'y Gen.*, 971 F.3d 1258 (11th Cir. 2020). Reversal of a finding under that standard requires us to conclude "not only that the evidence

---

[2] On petition for review, although identifying it as an issue for this Court to decide, Hasem withdraws his argument that the IJ and BIA abused their discretion in denying his request to continue his final hearing based on his medical condition.

supports a contrary [finding], but that it compels one." *Farquharson v. U.S. Att'y Gen.*, 246 F.3d 1317, 1320 (11th Cir. 2001). In other words, "the mere fact that the record may support a contrary [finding] is not enough to justify a reversal of the . . . finding[ ]." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc).

### III.

"To establish asylum eligibility based on political opinion, the alien carries the burden to prove, with credible evidence, that (1) he suffered past persecution on account of his political opinion, or (2) he has 'a well-founded fear' that his political opinion will cause him to be persecuted." *Rodriguez Morales v. U.S. Att'y Gen.*, 488 F.3d 884, 890 (11th Cir. 2007).[3]

In all applications for asylum, the IJ must make a threshold determination of the alien's credibility.[4] *See Matter of O-D-*, 21 I.

---

[3] Because an alien's burden of proving entitlement to withholding of removal or CAT relief is more demanding than the burden of proving eligibility, a failure to prove eligibility for asylum means that Hasem could not prove entitlement to withholding of removal or CAT relief. *See, e.g., Rodriguez Morales,* 488 F.3d at 891. We therefore focus solely on Hasem's asylum claim.

[4] When evaluating an asylum applicant's credibility, the IJ, while considering the totality of the circumstances, may take into account (1) "the demeanor, candor, or responsiveness of the applicant," (2) "the inherent plausibility of the applicant's" account, (3) "the consistency between the applicant's . . . written and oral statements," (4) "the consistency of such statements with other evidence of record," (5) "any inaccuracies or falsehoods in such statements," or (6) "any other relevant factor." 8 U.S.C. § 1158(b)(1)(B)(iii).

& N. Dec. 1079, 1081 (BIA 1998). In making this determination, "[t]here is no presumption of credibility," and the alien maintains the burden to prove his eligibility for relief by credible evidence. *See* INA §§ 1158(b)(1)(B)(iii), 1231(b)(3)(C), 1229a(c)(4)(C).

An applicant's testimony alone, if credible, may be sufficient to sustain the burden of proof for asylum without corroboration. 8 C.F.R. § 208.13(a). On the other hand, "an adverse credibility determination alone may [also] be sufficient to support the denial of an asylum application." *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1287 (11th Cir. 2005). If the IJ makes an adverse credibility finding, he must offer "specific, cogent" reasons in support of such a finding. *Id.* If an explicit adverse credibility determination is made, the burden then shifts to the alien "to show that the credibility decision was not supported by specific, cogent reasons or was not based on substantial evidence." *Kueviakoe v. U.S. Att'y Gen.*, 567 F.3d 1301, 1305 (11th Cir. 2009) (quotation marks omitted).

Here, both the IJ and the BIA found Hasem's testimony lacking in credibility due to inconsistencies between his testimony and the record and due to the implausibility of his testimony. And they offered "specific, cogent reasons" in support of this conclusion. First, there were several inconsistencies between his testimony at his merits hearing, his credible fear interview, and his application materials. Although Hasem testified in his merits hearing that he was attacked and stabbed by AL members, he made no mention of a knife attack in his credible fear interview, asylum application, or written declarations. Nor did Hasem's medical records support his

claim that he had received stiches in his hand as a result.  Finally, while Hasem (and his wife) stated in their affidavits that AL members had cursed at his wife during the tree-cutting incident, during his merits hearing he testified that they "threatened" her.  Second, both the IJ and BIA concluded that Hasem's claim of persecution was implausible because of his minor status in the LDP.  That is, both the IJ and BIA questioned why Hasem, whose only duties were to hang posters and serve tea, would be so heavily targeted by the AL.

Faced with an adverse credibility finding, the burden shifts to Hasem to show that "the credibility decision was not supported by specific, cogent reasons or was not based on substantial evidence." *Kueviakoe*, 567 F.3d at 1305 (quotation marks omitted). He is unable to do so. Instead, he argues that an adverse credibility finding must be based on at least one internal inconsistency and one omission on the part of the asylum applicant.  In the alternative, he argues that an adverse credibility finding must be based on more than one omission.  Our precedent establishes no such rule.  And even if it did, Hasem's argument would fail because not only did he omit from his asylum application and credible fear interview that he was stabbed, but his testimony at his merits hearing was also inconsistent with his medical records.[5]  Moreover, it is clear

---

[5] Hasem argues that any apparent inconsistencies between his medical records and merits testimony is due to a language barrier.  He suggests that confusion arose during his hearing because the parties used certain words interchangeably (arm, elbow, and hand) and the fact that, in Bengali, the words for forearm

that the IJ's decision was not based solely upon the fact that Hasem's testimony included both an omission and inconsistencies; the IJ also found it significant that Hasem had demonstrated a pattern of making more serious allegations in his merits testimony compared to his credible fear interview and application materials.

Applying the "highly deferential" standard of review, *Forgue*, 401 F.3d at 1286, we cannot say that this record "compels" a favorable credibility determination. *Adefemi*, 386 F.3d at 1027. The IJ determined that there was a "clear pattern" by Hasem "to testify to more serious allegations then he previously stated in either his asylum application, affidavit, or credible fear interview." Furthermore, given that the IJ was in a position to observe "the demeanor, candor, [and] responsiveness of the applicant," 8 U.S.C. § 1158(b)(1)(B)(iii), we also cannot say, on this record, that the IJ erred in concluding that Hasem's testimony was, on the whole, implausible. "At this juncture, we are not free to re-weigh the evidence." *Marin-Mejia v. U.S. Att'y Gen.*, 469 F. App'x. 830, 834 (11th Cir. 2012) (citing *Forgue*, 401 F.3d at 1286). We must instead examine the record in the light most favorable to the agency decision and draw all reasonable inferences in favor of it. *Id.* Although reasonable minds might disagree as to whether Hasem's testimony was credible, the record before us does not compel such a

---

(hasta) and hand (hata) sound very similar. However, the record makes clear that Hasem – in response to the IJ's request for clarification on exactly where Hasem was stabbed – raised his left hand and wiggled his fingers.

21-10126                Opinion of the Court                11

conclusion. *See Adefemi*, 386 F.3d at 1027.  The petition for review must therefore be denied.


**PETITION DENIED**